

## NUMBER 13-14-00262-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

WHITE POINT MINERALS, INC.,                                    Appellant,

v.

DICK SWANTNER,                                                        Appellee.

### On appeal from the County Court at Law No. 1
### of Nueces County, Texas.

## OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Opinion by Justice Benavides**

In this permissive interlocutory appeal, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West, Westlaw through 2013 3d C.S.), we are asked to determine whether the trial court erred in denying appellant White Point Minerals, Inc.'s ("Minerals") plea to the jurisdiction regarding appellee, Dick Swantner's, standing to bring his underlying action

pursuant to the Texas Business Organizations Code.   We reverse and remand.

## I.   BACKGROUND

Swantner was a shareholder of White Point Oil & Gas Company ("O&G"), a Texas corporation.   On November 1, 2012, O&G's board of directors called a special meeting of its shareholders, scheduled for November 28, 2012, to vote on an agreement and merger plan with Minerals, a Texas corporation.   Prior to the November 28, 2012 meeting, O&G sent Swantner:   (1) formal notice of the November 28, 2012 meeting; (2) a copy of the ballot to vote on the merger; (3) a copy of the proposed merger agreement with Minerals; (4) a copy of the relevant statutes under the Texas Business Organizations Code regarding a shareholder's right to dissent from a plan of merger; and (5) a copy of the Minerals' shareholders' agreement.

The shareholders' meeting to vote on the O&G-Minerals merger took place on November 28, 2012, and the merger was approved.   Swantner did not personally attend the meeting to vote and did not vote by proxy.   The new merger took effect after midnight on December 1, 2012.   The merger agreement contained the following language regarding the conversion of stock ownership from O&G to Minerals:

> **(c)   Manner and Basis of Converting Shares of Stock in White Point.**
> Upon consummation of the merger, all of the shares of stock in [O&G] will be cancelled. [O&G's] existing shareholders owning fifteen (15) or more shares of stock in [O&G] will receive one (1) share of common stock of Minerals in exchange for every fifteen (15) shares of stock in [O&G]. Cash will be paid in lieu of issuing fractional shares of Minerals stock on the basis of $232.00 per share of White Point stock. In addition, the shares of stock of all ineligible [O&G] shareholders will be converted into cash on the basis of $232.00 per share of [O&G] stock and distributed to such ineligible shareholders. Ineligible shareholders are shareholders of [O&G] owning less than fifteen (15) shares of [O&G] stock, shareholders who do not qualify as an S-Corporation shareholder and those who elect not sign [sic] a Shareholders' Agreement required for the issuance of Minerals stock.

2

Minerals will be responsible for distributing the cash payments to the applicable shareholders of [O&G].

On December 3, 2012, Swantner, through his attorney, requested a copy of "the director's meeting minutes from November 28, 2012" and a "list of the January 1, 2007, and current stock holders including the amount each owns in shares" from O&G's attorney.[1] On December 6, 2012 Swantner's attorney made another request to O&G's attorney for the documents specified in the December 3, 2012 letter. On December 13, 2012, O&G's attorney responded to Swantner's request informing him that Swantner ceased being a shareholder with O&G as a result of the merger and did not become a shareholder in Minerals, as a result of his failure to sign the shareholder agreement, as required by the merger agreement. Minerals enclosed a check to Swantner totaling $7,656.00, representing the value of Swantner's cancelled O&G stock.

On February 22, 2013, Swantner filed suit against Minerals for access to the requested documents and alleged that he was entitled to the corporation's relevant books, records of account, minutes, and share transfers pursuant to his shareholder rights under the business organizations code. *See* TEX. BUS. ORGS. CODE ANN. §§ 21.218, 21.222 (West, Westlaw through 2013 3d C.S.). Swantner later amended his petition to include an allegation that O&G committed shareholder oppression against him and dealt with him "unfairly" by failing to pay adequate dividends and by "squeez[ing] out disfavored shareholders," including Swantner.

On May 10, 2013, Minerals filed a plea to the jurisdiction alleging that the trial court lacked subject matter jurisdiction on the ground that Swantner lacked standing to bring

---

[1] O&G's attorney represented Minerals in the underlying case as well as on appeal.

3

his asserted claims under the business organizations code. At the hearing on the plea, Swantner testified that he made a written request to O&G while he was still a shareholder of O&G for "a copy of the lease that they had for the White Point Oil and Gas for whoever they leased to and didn't get it," as well as "a copy of the 2007 shareholder list with the number of shares each person had," but O&G was not responsive to this request. Aside from his testimony, however, Swantner did not produce any written evidence sent on his behalf to O&G prior to the December 1, 2012 merger. Instead, the trial court admitted into evidence a letter from O&G's counsel to Swantner's counsel dated November 15, 2012 stating in relevant part: "I have been provided your correspondence on behalf of [Swantner]. I will follow up with my client regarding your requests on behalf of Mr. Swantner." Another letter dated November 16, 2012 was also admitted at the hearing, again from O&G's counsel to Swantner's counsel, in which O&G turned over "some of" the info Swantner requested on November 9, 2012 and November 14, 2012, including "Company Bylaws, which were in effect from 1996 to 2009" and "Company Bylaws" which were in effect from 2009 until the date of the letter. O&G also provided Swantner with "Company Financial Statements for the years ending December 31, 2007 through 2011 and Company Federal Income Tax Returns for 2010 and 2011." O&G's counsel closed the November 16th letter by stating that they "are working to determine which of the additional documents" would be responsive to Swantner's stated purposes and were "in the process of gathering that information." The trial court denied Minerals's plea, and this permissive interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d).

4

## II.    PLEA TO THE JURISDICTION

By two issues, Minerals asserts that the trial court erred by denying its plea to the jurisdiction (1) challenging Swantner's standing to bring his claims under the business organizations code; and (2) challenging the trial court's subject-matter jurisdiction to hear Swantner's shareholder oppression claim.

### A.    Standard of Review

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Ind. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). Subject-matter jurisdiction is essential to a court's power to decide a case. *Id.* 554–55. Whether a court has jurisdiction is a question of law that is reviewed de novo. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When reviewing a trial court's ruling on a challenge to its jurisdiction, we consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue. *City of Elsa*, 325 S.W.3d at 625.

We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

5

However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do so. *Id.* at 227. In a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the evidence to determine if a fact issue exists. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228.

## B.    Discussion

### 1.  Texas Business Organizations Code Section 21.218 Claim

By Minerals's first issue, it asserts that Swantner lacks standing to bring such an action under section 21.218. In our review, we examine Swantner's pleadings, his assertion of rights pursuant to the business organizations code, and the relevant evidence submitted by the parties. Swanter invoked his rights to examine and copy Minerals's "relevant books, records of account, minutes, and share transfer records" pursuant to his rights as a shareholder under section 21.218 of the business organization code. *See* TEX. BUS. ORGS. CODE ANN. §§ 21.218; 21.222(a).

Standing is a prerequisite to subject-matter jurisdiction and may be raised by a plea to the jurisdiction. *See Blue*, 34 S.W.3d at 553–54. Our review of the scant number of cases addressing the relevant provisions yielded no results that are beneficial to the disposition of this case. Therefore, in order to determine whether Swantner has

6

standing under section 21.218, we preliminary construe the relevant statute de novo. *See Nathan v. Whittington*, 408 S.W.3d 870, 872 (Tex. 2013) (per curiam) ("We . . . review issues of statutory construction de novo.").

Our objective is to give effect to the Legislature's intent, and we do that by applying the statute's words according to their plain and common meaning unless a contrary intention is apparent from the statutes' context or the plain meaning leads to absurd or nonsensical results. *See id.* (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)). If the statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage. *TGS-NOPEC Geophys. Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Additionally, we consider statutes as a whole rather than in isolation. *Id.* With these rules in mind, we turn to the statute at issue.

The relevant statute states the following:

(a) In this section, a holder of a beneficial interest in a voting trust entered into under Section 6.251 is a holder of the shares represented by the beneficial interest.

(b) Subject to the governing documents and on written demand stating a proper purpose, a holder of shares of a corporation for at least six months immediately preceding the holder's demand, or a holder of at least five percent of all of the outstanding shares of a corporation, is entitled to examine and copy, at a reasonable time, the corporation's relevant books, records of account, minutes, and share transfer records. The examination may be conducted in person or through an agent, accountant, or attorney.

(c) This section does not impair the power of a court, on the presentation of proof of proper purpose by a beneficial or record holder of shares, to compel the production for examination by the holder of the books and records of accounts, minutes, and share transfer records of a corporation, regardless of the period during which the holder was a beneficial holder or record holder and regardless of the number of

7

shares held by the person.

TEX. BUS. ORGS. CODE § 21.218.

A "shareholder" or "holder of shares" is defined as (A) the person in whose name shares issued by a for-profit corporation, professional corporation . . . are registered in the share transfer records maintained by the for-profit corporation, [or] professional corporation . . . ; or (B) the beneficial owner of shares issued by a for-profit corporation, whose shares are held in a voting trust or by a nominee on the beneficial owner's behalf, to the extent of the rights granted by a nominee statement on file with the for-profit corporation in accordance with sections 21.201(b) and (c). *Id.* § 1.002 (81) (West, Westlaw through 2013 3d C.S.). Therefore, after giving effect to the Legislature's intent and applying the statute's plain and common meaning, *see Nathan*, 408 S.W.3d at 872, we hold that the statutory rights addressed in section 21.218 apply solely to a record or beneficial shareholder of a corporation at the time the demand is made or action is filed.

Minerals argues that Swantner lacks standing under these provisions because he has no vested interest in Minerals's corporate affairs due to his inaction prior to the merger with O&G and is, essentially, utilizing a shareholder-only statute to enforce a non-shareholder action by his written request on December 6, 2012. As a starting point, we look to Swantner's pleadings.

In his second-amended original petition—his live pleading before the trial court—Swantner alleges the following facts:

> On December 6, 2012, [Swantner], a shareholder in [O&G], which merged with [Minerals], requested in writing that [Minerals] provide him a copy of the director's meeting minutes for the meeting that occurred on November 28, 2012, and a list of the January 1, 2007 shareholders and the amount each shareholder owned at the time in shares. [Minerals] refuses to

8

produce or allow [Swantner] access to these documents.

In its plea to the jurisdiction, Minerals challenged Swantner's pleadings. Minerals argued that Swantner's December 6, 2012 written request was made after Swantner was no longer a shareholder. It is Minerals's position that as a non-shareholder, Swantner was unable to properly invoke the provisions of section 21.218 of the business organizations code. Minerals attached undisputed evidence to its plea establishing that the O&G-Minerals merger took effect at midnight on December 1, 2012. At the plea to the jurisdiction hearing, however, Swantner testified that he made his *first* request for corporate documents from O&G pre-merger in mid-November—not December 6. Documents admitted at the hearing confirm Swantner's testimony that he requested certain documents from O&G prior to the merger in mid-November 2012. However, the substance of these document requests are unclear from the record.

In sum, the record at this stage of the proceedings shows the following: (1) Swantner's live pleading invoking section 21.218 of the business organization code alleges that he made a written request for "a copy of the director's meeting minutes for the meeting that occurred on November 28, 2012, and a list of the January 1, 2007 shareholders and the amount each shareholder owned at the time in shares" on December 6, 2012; (2) Minerals presented undisputed evidence that the O&G-Minerals merger took place on December 1, 2012; and (3) testimony by Swantner and other written evidence indicates that a request for certain documents was made to O&G by Swantner *before* December 1, 2012.

Therefore, after considering the pleadings and factual assertions, as well as the evidence relevant to the jurisdictional issue submitted by both parties, *see City of Elsa*,

325 S.W.3d at 625, we conclude that Swantner's pleadings do not state sufficient facts to demonstrate the trial court's jurisdiction over his section 21.218 claims. *See Miranda*, 133 S.W.3d at 226. We sustain Minerals's first issue. However, in light of the evidence submitted related to the relevant jurisdictional issue of standing, Swantner's pleadings also do not affirmatively demonstrate incurable defects in jurisdiction. *See id.* The issue in this case is one of pleading sufficiency, and Swantner should be afforded the opportunity to replead in an attempt to cure the jurisdictional defects in his petition. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011); *Miranda*, 133 S.W.3d at 226–27; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

### 2. Shareholder Oppression Claim

By its second issue, Minerals challenges the trial court's subject matter jurisdiction with regard to Swantner's claim of shareholder oppression against Minerals and relies on a recent Texas Supreme Court decision which held that Texas does not recognize a common law action for minority shareholder oppression. *Ritchie v. Rupe*, 443 S.W.3d 856, 877–91 (Tex. 2014). However, a review of the record shows that Minerals did not make this specific challenge to the trial court's jurisdiction in its plea. To the contrary, the entire substance of Minerals's plea, as well as its arguments at the hearing on the plea, focused solely on the interpretation of business organizations code 21.218 and how it deprived Swantner of standing to bring such an action. As a result, Swantner was not given any notice or opportunity to respond or potentially cure such a jurisdictional challenge until this case was on appeal. Likewise, the trial court was not given an opportunity to rule upon Minerals's challenge, if any, to Swantner's shareholder oppression claims. Finally, we note that the *Ritchie* decision was issued a month after

10

the trial court's denial of Minerals's plea to the jurisdiction. *See id.*

We strictly construe section 51.014(d) because it provides for an interlocutory appeal as an exception to the general rule that only final judgments are appealable. *See Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints v. Doe*, No. 13-13-00463-CV, 2013 WL 5593441, at *1 (Tex. App.—Corpus Christi Oct. 10, 2013, no pet.) (mem. op.). Our scope of review in these types of appeals are limited to a (1) "controlling question of law as to which there is a substantial ground for difference of opinion;" and (2) our immediate resolution "may materially advance the ultimate termination of the litigation." *See* TEX. R. APP. P. 28.3(e). We granted Minerals's permissive interlocutory appeal solely to address Swantner's standing to bring a section 21.218 action. Accordingly, in light of the procedural posture of this case and the provisions governing permissive interlocutory appeals, we do not reach Minerals's second issue because of our limited scope of review in this permissive appeal. *See id.* 28.3(e), 47.1.

### III. CONCLUSION

Without expressing any opinion on the merits of Swantner's action, we reverse the trial court's denial of Minerals's plea to the jurisdiction on the issue of whether Swantner has standing to maintain a section 21.218 shareholder action and remand this case to allow Swantner an opportunity to replead.


GINA M. BENAVIDES,
Justice


Delivered and filed the
28th day of May, 2015.

11