# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0498

═══════════

JEFFERSON COUNTY, TEXAS, PETITIONER,

v.

JEFFERSON COUNTY CONSTABLES ASSOCIATION, RESPONDENT

═══════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════

**Argued November 7, 2017**

JUSTICE LEHRMANN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE DEVINE, JUSTICE BROWN, and JUSTICE BLACKLOCK joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE JOHNSON joined.

This case comes to us on a county's petition to vacate an arbitrator's award in a dispute governed by a collective bargaining agreement between the county and its deputy constables. The primary issue presented involves the validity of the underlying agreement; specifically, we are asked whether deputy constables are "police officers" entitled to enter into collective bargaining agreements with their public employers under Local Government Code chapter 174. If they are, we are also asked whether the arbitrator in this case nevertheless exceeded his authority in (1) concluding the county violated the agreement by eliminating several deputy-constable positions without regard to seniority, and (2) ordering the county to reinstate the deputies in order of

seniority. The court of appeals held that the deputy constables are "police officers" and that the arbitrator did not exceed his authority. We agree and affirm the court's judgment.

## I. Background

The case centers on a collective bargaining agreement (CBA) between Jefferson County, Texas, and the Jefferson County Constables Association, which the County has recognized as the exclusive bargaining agent for the County's deputy constables. The CBA at issue, effective October 1, 2007, through September 30, 2011,[1] established standards governing the deputy constables' wages, hours, and other terms and conditions of employment. Pertinent here, Article 8 of the CBA vests exclusively with the County "the right to lay off for lack of work or funds" and "the right to abolish positions," but Article 13 provides that "[s]eniority shall be the sole factor in layoff and recall, with layoff being accomplished beginning with the least senior deputy, and recall beginning with the most senior deputy in the highest job classification." The CBA contained a multi-step procedure to resolve disputes involving alleged violations of the agreement or its proper interpretation, culminating in submission of the dispute to final, binding arbitration.

The County has six constable precincts, each with an elected constable and a number of deputy constables.[2] In 2010, the County implemented budget cuts and eliminated eight deputy-constable positions across the precincts. The Constables Association alleged that this action violated the CBA's seniority restriction on layoffs. Because the parties were unable to resolve the

---

[1] In an amicus brief submitted in support of the Constables Association, the Combined Law Enforcement Association of Texas notes that the County and the Constables Association "have been parties to an uninterrupted succession of collective bargaining agreements" since 1994. The parties do not dispute this assertion.

[2] The six elected constables signed the CBA, along with the county judge and the Constables Association's president. Under the Texas Constitution, the county judge serves as presiding officer of the county commissioners court, which exercises prescribed "powers and jurisdiction over all county business." TEX. CONST. art. V, § 18(b).

dispute during the grievance process, the Constables Association submitted the dispute to arbitration. After a hearing, the arbitrator issued written findings, including that the County "violated the CBA by laying off or failing to budget for specific deputy constables without regard to seniority." The arbitrator awarded the following relief:

1. The parties shall met [sic] and negotiate to agree on the seniority ranking of the deputy constables to determine which constables should be reinstated and in what order.

2. The County shall reinstate those deputy constables laid off and pay the back wages, less the income made by the deputy from other employment, in the order of their seniority.

3. The arbitrator shall retain jurisdiction for thirty (30) days to resolve any dispute over the payment of back wages.

The County filed a petition to vacate the arbitration award in district court, alleging four grounds for vacatur: (1) the arbitrator lacked jurisdiction to render an award that intruded on "the sovereign governmental responsibilities of the Jefferson County Commissioners Court"; (2) the arbitrator exceeded his jurisdiction by "essentially controlling the budgetary process reserved by law in this instance to the county government"; (3) the award was not supported by substantial evidence; and (4) the "arbitrator violated the law governing the interpretation of contracts" by rendering meaningless the CBA provision reserving to the County the right to abolish positions.

Both parties moved for summary judgment. The Constables Association argued that the arbitrator acted well within his authority in interpreting and applying the CBA. The County argued that the arbitrator (1) superseded the commissioners court's responsibility to determine the need for deputy-constable positions and set the County's budget, and (2) ignored the contractual rights reserved to the County to lay off employees or abolish positions. The trial court granted the County's motion and rendered final judgment in its favor. The Constables Association appealed.

3

After the parties completed principal briefing in the court of appeals, the County filed a supplemental brief arguing for the first time that the CBA was invalid, depriving the arbitrator of jurisdiction to resolve any dispute arising under it. Specifically, the County argued that the CBA's validity depends on the applicability of Texas Local Government Code chapter 174, also known as the Fire and Police Employee Relations Act (hereinafter, Collective Bargaining Act or Act), which authorizes fire fighters and police officers to collectively bargain with their public employers. Although the parties had agreed in the CBA to their "mutual obligation to bargain in good faith" under the Act, the County took the position in its supplemental briefing that deputy constables are not "police officers" as the Act defines the term; that the CBA is void and unenforceable as a result; and that the deputy constables (and the Constables Association) therefore "lack[] standing under Chapter 174."

The court of appeals reversed and rendered judgment for the Constables Association. 512 S.W.3d 434, 436 (Tex. App.—Corpus Christi–Edinburg 2016). The court first addressed the newly raised issue of the deputy constables' status as police officers, noting that the issue's resolution implicated the Association's standing to enforce the CBA, which in turn implicated the courts' subject-matter jurisdiction. *Id.* at 437. Concluding that the deputy constables qualified as police officers under the Collective Bargaining Act, the court went on to hold that (1) the arbitrator's award did not usurp the County's statutory authority concerning the appointment of deputy constables and (2) the arbitrator did not exceed his authority in awarding reinstatement of more senior deputies. *Id.* at 440, 443–44. We granted the County's petition for review.

4

## II. Review of Arbitration Awards

We first examine the authority governing our review of the arbitration award. As the court of appeals noted, the Texas General Arbitration Act by its terms does not apply to collective bargaining agreements, TEX. CIV. PRAC. & REM. CODE § 71.002(a)(1), and the Collective Bargaining Act's arbitration provisions govern only impasses arising during the collective bargaining process, not disputes arising under an executed agreement, TEX. LOC. GOV'T CODE § 174.153. Thus, we review the arbitrator's award under the common law.

As relevant here, the common law allows vacatur of an arbitration award if the arbitrator exceeds the scope of his authority or the award "clearly violates carefully articulated, fundamental [public] policy." *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 239 (Tex. 2002); *see also Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959) (explaining that "the authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication"). In *CVN Group*, we reaffirmed our holding in *Smith v. Gladney*, 98 S.W.2d 351, 351 (Tex. 1936), that public policy precludes judicial enforcement of an arbitration award that is based on a legally unenforceable obligation. 95 S.W.3d at 237–38 ("[A]n illegal contract unenforceable by litigation should not gain legitimacy through arbitration.").

## III. The CBA's Validity

The County's principal contention is that the CBA violates Texas law and is therefore void and unenforceable. *See Woolsey v. Panhandle Ref. Co.*, 116 S.W.2d 675, 678 (Tex. 1938) ("[A]n agreement which violates a valid statute is illegal and void, and cannot be enforced."). To that end, Texas law generally precludes the State and its political subdivisions from entering into

5

collective bargaining agreements with their employees regarding employment terms and conditions. TEX. GOV'T CODE § 617.002(a), (b) ("A contract entered into in violation of Subsection (a) is void."). However, the Collective Bargaining Act creates an exception applicable to fire fighters and police officers in political subdivisions that have adopted the Act via majority vote in an election. TEX. LOC. GOV'T CODE §§ 174.023, .051, .052. Upon such adoption, "fire fighters, police officers, or both are entitled to organize and bargain collectively with their public employer regarding compensation, hours, and other conditions of employment." *Id.* § 174.023. The County contends that a deputy constable does not meet the Act's definition of "police officer" and that the CBA therefore violates Government Code section 617.002.

## A. Standing

As noted, the County did not raise the CBA's alleged illegality as a ground for vacatur in the trial court, arguing the point for the first time in supplemental briefing in the court of appeals. This raises the question whether the County failed to preserve error on this issue. TEX. R. APP. P. 33.1(a), 38; *Black v. Shor*, 443 S.W.3d 154, 163 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied) (holding that a party seeking to vacate an arbitration award waives on appeal any grounds not presented to the trial court); *see also Hooper v. Brinson*, 2 Tex. 185, 188 (1847) (holding that a party's failure to object to the arbitrators' award on a specific ground precluded the party from asserting the ground as error on appeal). The County addresses the waiver problem by arguing that the CBA's invalidity forecloses the Constables Association's standing to enforce the arbitration award, thereby depriving the courts of subject-matter jurisdiction over this action. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443, 445 (Tex. 1993) (noting that standing

6

is implicit in the concept of subject-matter jurisdiction, which may not be waived). The court of appeals similarly addressed the issue as one of standing. 512 S.W.3d at 437. We disagree.

We have described standing as "a constitutional prerequisite to maintaining suit."[3] *Sneed v. Webre*, 465 S.W.3d 169, 179 (Tex. 2015) (quoting *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001)). "Generally, unless standing is conferred by statute, 'a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury.'" *Id.* at 180 (quoting *Williams*, 52 S.W.3d at 178–79); *see also Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (explaining that standing involves "whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome" (citation omitted)). As a party to the underlying CBA and the party in whose favor the challenged arbitration award was issued, the Constables Association possesses a significant interest in the conflict over the award's enforceability.

We recognize that, as noted, a contract's illegality forecloses its enforcement regardless of whether it has been blessed by an arbitrator. *CVN Grp.*, 95 S.W.3d at 238. The County essentially offers the CBA's purported invalidity as a defense to its enforcement, arguing the agreement violates Government Code section 617.002 and does not fall within the "police officer" exception carved out in the Collective Bargaining Act. But illegality is an affirmative defense to a claim, not an impediment to a party's standing to assert it. TEX. R. CIV. P. 94 (listing illegality as an affirmative defense); *see also Mabry v. Priester*, 338 S.W.2d 704, 706 (Tex. 1960) (holding, with

---

[3] The County, not the Constables Association, is the party that initiated this suit by filing a petition to vacate the arbitration award. The Constables Association did not file a formal counterclaim to confirm the award, but did file a motion for summary judgment asking the trial court to "maintain and enforce" the award.

respect to an architect's claim to recover his contractual fee for services rendered, that if he "was not in fact an architect in good standing when he made the contract and performed the services alleged, then his contract was illegal and [the client] should have affirmatively pleaded its illegality" pursuant to Rule 94).[4]

In evaluating the CBA's validity as an issue affecting the Constables Association's standing, the court of appeals appears to have relied on *Wolff v. Deputy Constables Ass'n of Bexar County*, 441 S.W.3d 362 (Tex. App.—San Antonio 2013, no pet.). 512 S.W.3d at 437. In that case, the Fourth Court of Appeals addressed the precise legal issue presented here: whether deputy constables are "police officers" under the Collective Bargaining Act. *Wolff*, 441 S.W.3d at 365. Concluding that they are not, the *Wolff* court held that the deputies lacked standing to sue under the Act. *Id.* at 366. However, the issue arose under much different circumstances than the case at hand. In *Wolff*, no agreement existed between the deputy constables and Bexar County; rather, the deputy constables had requested, to no avail, that the County engage in the collective bargaining process with them and sought a declaratory judgment that the County violated the Act by failing to do so. *Id.* at 364. Because the Act allows only fire fighters and police officers to engage in collective bargaining with their public employers, it follows that only fire fighters and police officers have standing to complain when an employer refuses to do so in violation of the Act. They are the ones whose interest in the conflict is "distinct from that of the general public" and who suffer a "particular injury" caused by the employer's conduct. *Sneed*, 465 S.W.3d at 180.

---

[4] We have relaxed the pleading requirement when "the illegal nature of the document to be relied upon or sought to be enforced is apparent from the plaintiff's pleadings." *Lewkowicz v. El Paso Apparel Corp.*, 625 S.W.2d 301, 303 (Tex. 1981). But this exception does not transform illegality from an affirmative defense to an issue affecting the standing of the party seeking to enforce the disputed document.

8

By contrast, this case does not stem from an alleged violation of the Collective Bargaining Act. The County and the Constables Association have already engaged in the collective bargaining process, reached an agreement, and participated in arbitration proceedings regarding a dispute over whether the County violated that agreement. Thus, the Association is seeking to enforce a contract, not the Act. In turn, although the CBA's validity may hinge on the Act's applicability, the Association's standing does not.

Accordingly, the CBA's validity does not affect the courts' subject-matter jurisdiction over this dispute, and the County therefore risked waiving illegality as a defense by failing to raise it as a basis to vacate the arbitration award in either the trial court or its principal briefing in the court of appeals. However, we note that both parties have fully briefed and argued the merits of the issue here. Further, the Constables Association does not ask us to resolve the question on waiver grounds and concedes that its general collective bargaining rights depend on the deputy constables' status as police officers under the Act. For these reasons, and because the issue is of continuing importance to our jurisprudence, we will address it.

### B. Deputy Constables Are "Police Officers"

Whether the deputy constables are police officers entitled to collectively bargain under the Act is a matter of statutory interpretation. In construing the Act, as with any statute, our primary objective is to give effect to the Legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We begin with the "ordinary meaning of the statutory text." *In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014). "We analyze statutory language in context, considering the specific section at issue as well as the statute as a whole." *CHCA Woman's Hosp. v. Lidji*, 403 S.W.3d 228, 231–32 (Tex. 2013). The Legislature has further instructed that the Act "shall be

9

liberally construed." TEX. LOC. GOV'T CODE § 174.004. Applying these principles, we hold that deputy constables are police officers under the Act.

The Act implements two express policies. First, it gives fire fighters and police officers "the right to organize for collective bargaining" as "a fair and practical method for determining compensation and other conditions of employment." *Id.* § 174.002(b). Second, despite granting this right, the Act stops short of allowing these employees to engage in strikes and other work stoppages,[5] instead providing "reasonable alternatives" like arbitration and judicial enforcement of the Act's requirements. *Id.* § 174.002(c), (d). The provision of alternatives to strikes is intended to protect the "health, safety, and welfare of the public" in light of "the essential and emergency nature of the public service performed by fire fighters and police officers." *Id.*

The term "police officer" is statutorily defined in the Act as "a paid employee who is sworn, certified, and full-time, and who regularly serves in a professional law enforcement capacity in the police department of a political subdivision." *Id.* § 174.003(3). The parties' principal dispute is whether the deputy constables serve in "the police department of a political subdivision." The Act does not define the term "police department," but its ordinary meaning is "a governmental department concerned with the administration of the police force." WEBSTER'S THIRD INT'L DICTIONARY 1754 (2002). In turn, a "police force" is "a professional body of trained officers . . . entrusted by a government with maintenance of public peace and order, enforcement of laws, and prevention and detection of crime." *Id.*

---

[5] Texas law generally prohibits public employees from engaging in strikes or work stoppages. TEX. GOV'T CODE § 617.003.

10

The County argues that the Jefferson County Sheriff's Department is "the police department" of Jefferson County and that, because the County's deputy constables do not work in the sheriff's department, they are not police officers under the Act. The County notes that the sheriff's department responds to 9-1-1 calls and manages the county jail, performing the kind of "essential and emergency" services the Act contemplates. TEX. LOC. GOV'T CODE § 174.002(d). The County further maintains that, while deputy constables "have some law enforcement power," their principal duty is to serve process. The Constables Association responds that the County views the term "the police department" too restrictively and that it includes both the sheriff's department and the constable's office. The Association argues that deputy constables "perform essential and at times emergency public services" and that preventing work stoppages by those employees is thus critical to public health, safety, and welfare.

The courts of appeals are divided on the issue. In *Wolff*, the Fourth Court of Appeals summarily concluded that deputy constables are not police officers under the Act "because they do not serve in the 'police department' of the county or the Sheriff's Office." 441 S.W.3d at 366. And in *Jefferson County v. Stines*, the Ninth Court of Appeals concluded that "the primary statutory duties of a constable" involve serving process and that, while such duties constitute "valuable and important services to the county and the public, [they] are not the type of critical emergency services to the public encompassed by the narrow definition [of police officer] enacted by the Legislature when it created the [Act]." 523 S.W.3d 691, 718 (Tex. App.—Beaumont 2017, pet. filed). By contrast, in this case, the Thirteenth Court of Appeals found "no meaningful distinction between deputy sheriffs and deputy constables with respect to the [Act's] definition of 'police officers.'" 512 S.W.3d at 440.

11

A review of a spectrum of statutes governing the authority and duties of constables and other law-enforcement officers is helpful in considering whether deputy constables can be considered as serving in the "police department" of a county.[6] The Code of Criminal Procedure lists thirty-five categories of "peace officers." TEX. CODE CRIM. PROC. art. 2.12. The members of three of those categories—sheriffs and their deputies, constables and their deputies, and municipal police officers—"hold a permanent peace officer license issued under Chapter 1701, Occupations Code."[7] *Id.* art. 2.12(1)–(3). Peace officers have the duty to "use all lawful means" "to preserve the peace within the officer's jurisdiction." *Id.* art. 2.13(a). A constable's jurisdiction extends to "anywhere in the county in which the constable's precinct is located." TEX. LOC. GOV'T CODE § 86.021(c). Among other things, peace officers shall "interfere without warrant to prevent or suppress crime" where authorized and "arrest offenders without warrant" where authorized. TEX. CODE CRIM. PROC. art. 2.13(b)(1), (4). Peace officers may also execute warrants of arrest issued by magistrates. *Id.* art. 15.01. And peace officers have specified duties relating to investigations of family-violence allegations. *Id.* art. 5.04.

In addition to the authority and responsibilities granted to peace officers generally, the Legislature confers specific authority on constables and their deputies, and sometimes that

---

[6] It is undisputed that a county qualifies as a political subdivision under the Act. The Constables Association alternatively argues that the pertinent political subdivision here is the precinct, not the county, and that the constable's office is the police department of a precinct. We disagree. The Act governs collective bargaining rights between fire fighters or police officers and their "public employer," defined as "the official or group of officials of a political subdivision whose duty is to establish the compensation, hours, and other conditions of employment . . . and may include . . . commissioners." TEX. LOC. GOV'T CODE § 174.003(5). There appears to be no dispute that deputy constables are employed by the County and that the county commissioners establish the deputies' compensation and conditions of employment.

[7] Chapter 1701 prescribes application, examination, and training requirements, including continuing education. *See generally, e.g.*, TEX. OCC. CODE §§ 1701.301–.355. Deputy constables must "qualify in the manner provided for deputy sheriffs." TEX. LOC. GOV'T CODE § 86.011(b).

authority is shared with other law-enforcement officers like sheriffs or municipal police chiefs. For example:

- The sheriff and constable shall execute and return all process directed to them. TEX. LOC. GOV'T CODE §§ 85.021(a), 86.021(a). For constables, this includes eviction notices. *Id.* § 86.021(a).

- The constable is directed to "attend each justice court held in the precinct." *Id.* § 86.021(e).

- The constable is directed to serve protective orders issued under Code of Criminal Procedure article 6.08, which applies when certain crimes have allegedly been committed because of bias or prejudice. TEX. CODE CRIM. PROC. art. 6.08(c)(2).

- When a court issues a protective order under the Family Code that excludes the respondent from his or her residence, the court "shall" order "the sheriff, constable, or chief of police to provide a law enforcement officer from the department of the chief of police, constable, or sheriff to" accompany and protect the applicant while the applicant takes possession of the residence. TEX. FAM. CODE §§ 86.003, .004.

Further, several statutes group together constable's offices, sheriff's departments, and municipal police departments for various law-enforcement purposes. For example, the Government Code provides for the establishment of a grant program to assist "law enforcement agencies"—defined as the police department of a municipality, the county sheriff's office, or a county constable's office—in testing evidence collected in relation to sexual assaults. TEX. GOV'T CODE § 772.00715(a)(4), (b). Further, the Legislature has established as a state agency the Texas Commission on Law Enforcement, which, among other things, establishes minimum standards

13

applicable to peace-officer licensing. TEX. OCC. CODE §§ 1701.051(a), .151(2). The commission consists of nine appointed members, three of whom "are sheriffs, constables, or chiefs of police." *Id.* § 1701.051(a)(1). Moreover, every county sheriff and constable and every municipal police chief are associate members of the Department of Public Safety, which is a state agency "to enforce the laws protecting the public safety and provide for the prevention and detection of crime." TEX. GOV'T CODE §§ 411.002, .009.

The County does not dispute that Texas law "provide[s] deputy constables with statutory *authority* to perform the governmental function of maintaining public peace and order" throughout the county in which they serve. *Arrington v. Cty. of Dall.*, 792 S.W.2d 468, 471 (Tex. App.—Dallas 1990, writ denied) (emphasis added). In other words, there is no argument or indication that deputy constables, or the departments they serve, lack the authority to provide the type of law-enforcement functions encompassed by the general definition of "police department" and the Collective Bargaining Act's policy of protecting public health and safety. Indeed, those courts of appeals that have concluded deputy constables are not "police officers" nevertheless recognize that they "serve in a law enforcement capacity and render a valuable service to the community, risking their own safety." *Wolff*, 441 S.W.3d at 366; *see also Stines*, 523 S.W.3d at 718 (acknowledging that "many constable departments . . . provide valuable law enforcement services the same as those of sheriff departments"). Rather, the County argues (1) the Act's reference to "the" police department connotes a singular entity, and that entity is the sheriff's department in Jefferson

14

County,[8] and (2) as a factual matter, the deputy constables in Jefferson County do not perform the kind of law-enforcement services the Act contemplates. We address these contentions in turn.

First, we disagree with the County's assertion that the Collective Bargaining Act's reference to "*the* police department of a political subdivision" means there can be only one such department. (Emphasis added). The word "the" can certainly be used as a definite article, but it is not necessarily so limiting. As the Constables Association argues, it may also be used to indicate that a noun "is to be understood generically." WEBSTER'S THIRD INT'L DICTIONARY 2369 (2002). For example, as the amicus brief points out, the Act's statement that "*[t]he* policy of this state is that fire fighters and police officers . . . should have the right to organize for collective bargaining" does not mean that the state has no other policies. (Emphasis added). Particularly given the Legislature's direction to construe the Act liberally, we decline to interpret the phrase "the police department of a political subdivision" so narrowly.

The County contends that, without this limitation, the defined term "police officer" is written out of the statute and replaced with the broader term "peace officer." According to the County, the result is that all thirty-five categories of peace officers enumerated in Code of Criminal Procedure article 2.12 are permitted to collectively bargain with their public employers. While only the constable category is before us, we note that the County's conclusion appears overstated. For example, peace officers employed by state agencies, such as "law enforcement agents of the Texas Alcoholic Beverage Commission" and rangers commissioned by the Public Safety Commission, do not serve in any department "of a political subdivision," as the State itself is not

---

[8] Both the County and the Constables Association acknowledge that deputy sheriffs are police officers under the Act.

15

a political subdivision.[9]  TEX. CODE CRIM. PROC. art. 2.12(4), (6); *see Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 643 (Tex. 2004) (distinguishing between state agencies and political subdivisions).  Other peace officers are commissioned by and serve entities that clearly do not qualify as police departments, such as school districts, water control and improvement districts, and hospital districts.  TEX. CODE CRIM. PROC. art. 2.12(8), (15), (18); *see also City of San Antonio v. Park Rangers Ass'n*, 850 S.W.2d 189, 192–93 (Tex. App.—San Antonio 1992, writ denied) (holding that the city's park rangers were not police officers under the Act because the park rangers department was not "the police department of a political subdivision").  The conclusion that deputy constables serve in the police department of a political subdivision simply does not stretch the Collective Bargaining Act to apply to all persons statutorily designated as peace officers.

Next, the County insists that, whatever authority they might otherwise have, as a factual matter deputy constables in Jefferson County primarily serve process and therefore do not "regularly serve[] in a professional law enforcement capacity" as the Act requires.  TEX. LOC. GOV'T CODE § 174.003(3).  By contrast, the County argues, the sheriff's department performs the types of "emergency" services that the Act contemplates.  Specifically, the sheriff's department operates the county jail and responds to 9-1-1 calls.[10]  We reject this argument for two reasons.

---

[9] Other examples of this nature are law-enforcement officers or investigators commissioned by the General Services Commission (now the Texas Facilities Commission), the Parks and Wildlife Department, the comptroller, the Texas Medical Board, the Texas Racing Commission, the Texas State Board of Pharmacy, the attorney general, the Texas Lottery Commission, the state fire marshal, the commissioner of insurance, the Texas Juvenile Justice Department, the inspector general of the Department of Criminal Justice, the Texas Commission on Law Enforcement, the Texas Private Security Board, and the State Board of Dental Examiners.  TEX. CODE CRIM. PROC. art. 2.12(9), (10), (14), (17), (20), (21), (23), (24), (26), (27), (28), (29), (30), (31), (33), (34).

[10] Texas law delegates operation of the county jail to the sheriff.  TEX. LOC. GOV'T CODE §§ 85.005(a), 351.041.  The record does not reflect which department responds to 9-1-1 calls in Jefferson County, but the Constables Association does not dispute the County's assertion that the sheriff's department performs that service.

16

First, we disagree with the County that the public policies the Act recognizes result in a narrower definition of the term "police officer" than the Act expressly provides. As noted, although the Act allows police officers and fire fighters to collectively bargain, it stops short of allowing strikes or other work stoppages, explaining the policy behind this limitation as follows:

> (c) The health, safety, and welfare of the public demands that strikes, lockouts, and work stoppages and slowdowns of fire fighters and police officers be prohibited, and therefore it is the state's duty to make available reasonable alternatives to strikes by fire fighters and police officers.

> (d) Because of the essential and emergency nature of the public service performed by fire fighters and police officers, a reasonable alternative to strikes is a system of arbitration conducted under adequate legislative standards. . . .

*Id.* § 174.002(c), (d). The County interprets this language as a condition on the Act's application, arguing that deputy constables are not "police officers" under the Act unless they perform the kind of "essential and emergency" services the Act is intended to preserve. *See Stines*, 523 S.W.3d at 718 (concluding that a deputy-constable strike "would not likely cause the severity of injury to 'the health, safety, and welfare of the public'" that the Act contemplates).

We addressed a similar statutory-interpretation argument in *Texas Student Housing Authority v. Brazos County*, 460 S.W.3d 137 (Tex. 2015). The issue in that case was the scope of a property-tax exemption for property owned by a "higher education facility authority." *Id.* at 138. The statute conferring the exemption stated: "Because the property owned by [the higher education facility] authority will be held for educational purposes only and will be devoted exclusively to the use and benefit of the students, faculty, and staff members of an accredited institution of higher education, it is exempt from taxation of every character." TEX. EDUC. CODE § 53.46. The county appraisal district argued that the property at issue was not exempt from taxation because it was not in fact "held for educational purposes only" or "devoted exclusively to the use and benefit of the

17

students, faculty, and staff members of an accredited institution of higher education." *Tex. Student Hous. Auth.*, 460 S.W.3d at 142. We rejected that argument, explaining:

> The provision states a presumption (about how the property is held and used) then an unconditional proclamation (the property is tax-exempt). The introductory clause isn't worded as a condition—*if* the property is so held and used, *then* it's exempt. The exemption does not speak to property being used "nonexclusively" or impose consequences for such use. Rather, the statute seems to state in absolute terms that the property is, in all events, exempt.

*Id.* Similarly, in this case, the introductory clause to section 174.002(d) of the Collective Bargaining Act states a presumption (about the nature of the services provided by fire fighters and police officers), not a condition. TEX. LOC. GOV'T CODE § 174.002(d). The Act then unequivocally states these employees "are entitled to organize and bargain collectively with their public employer." *Id.* § 174.023. Section 174.002 simply does not purport to modify the definition of police officer in section 174.003.

This conclusion makes practical as well as interpretive sense. If the employees at issue otherwise qualify as police officers under the Act's express definition, courts need not engage in a fact-driven and open-ended analysis regarding whether the services specific employees provide are essential or emergent enough—or whether a strike by that group is a severe enough threat to public health and safety—to warrant the Act's application. The Legislature has categorically determined that they are.

In turn, the County's insistence that the deputy constables in Jefferson County perform some duties that arguably do not qualify as law enforcement or crime detection or prevention does not alter our conclusion. To some extent, deputy constables' daily responsibilities vary by county and even by precinct. But their statutory duties are identical, and we do not read the Collective Bargaining Act to apply to some deputy constables as "police officers" but not others. And in any

18

event, the record—which is sparse in light of the fact that the issue was first raised on appeal—does not support the County's contention. According to the arbitrator's summary of the testimony, one county commissioner testified that, other than serving papers and acting as justice-court bailiffs, deputy constables are "not required to do law enforcement functions, but some do law enforcement tasks." The county judge testified that "deputy constables are authorized to perform some law enforcement duties, which he considered to be required in emergency situations, like observing an armed robbery." The County's annual budget for fiscal year 2010–2011, which is not in the trial court's record but which the County submitted to the Court as an appendix to its brief on the merits,[11] describes the county's constables as "constitutionally authorized peace officers elected by precinct. While they may perform patrol functions and make criminal investigations, the main duty of most Constables is to serve as executive officer of the Justice of the Peace Courts. Constables serve subpoenas and other papers."

While the evidence is not entirely consistent, even the County's own documents and witnesses recognize that deputy constables perform law-enforcement duties separate and apart from serving process and acting as justice-court bailiffs. This corresponds to their statutory authority, which, while not identical to that of deputy sheriffs, certainly overlaps with it. And it supports the conclusion that the constable's office is a department concerned with the administration of "a body of trained officers entrusted by a government with maintenance of public peace and order, enforcement of laws, and prevention and detection of crime." *Police department*, *Police force*, WEBSTER'S THIRD INT'L DICTIONARY 1754 (2002).

---

[11] The County asks us to take judicial notice of this document, and the Constables Association does not oppose this request.

In sum, we hold that deputy constables "regularly serve[] in a professional law enforcement capacity in the police department of a political subdivision." TEX. LOC. GOV'T CODE § 174.003(3). Accordingly, deputy constables are "police officers" under the Collective Bargaining Act.[12] We therefore hold that the CBA between the County and the Constables Association is valid and enforceable.

## IV. Arbitrator's Award

The County next challenges the arbitrator's authority to issue an award requiring the County to reinstate and award back pay to the terminated deputy constables in order of seniority.[13] The award stemmed from the arbitrator's findings that the "County violated the CBA by laying off or failing to budget for specific deputy constables without regard to seniority," which was to be "determined by the length of service by an officer countywide." As noted, the CBA vested the County with "the right to lay off for lack of work or funds" and "the right to abolish positions," but also provided that "[s]eniority shall be the sole factor in layoff and recall."

The County argues that the county commissioners court "eliminated" the deputy positions (along with their respective salaries) as part of its delegated legislative duty to create the county budget, and that the arbitrator effectively usurped that duty by ordering the deputies "reinstated" to a position that no longer exists. The County distinguishes between layoffs, which are governed by seniority under the CBA, and "the abolishing of positions," which the County has unfettered authority to do. The Constables Association responds that the County's mere disagreement with

---

[12] As noted, it is undisputed that the Jefferson County deputy constables meet the remainder of the Act's definition; specifically, they are paid employees who are sworn, certified, and full time. *Id.* § 174.003(3).

[13] According to the Constables Association's summary-judgment motion, only one of the affected former deputy constables wishes to be reinstated in accordance with the arbitrator's award.

20

the arbitrator's interpretation of the CBA—an issue that was properly submitted to the arbitrator—does not provide grounds to vacate the award.

We agree with the Association. The arbitrator did not quibble with the County's right to abolish as many deputy positions as it deemed necessary or prudent, nor did he order the County to create or fund positions that no longer existed. He merely determined that, upon eliminating funding for eight deputy-constable positions, the County was required under the CBA to consider the deputies' countywide seniority in determining which eight deputies were to be terminated. The arbitrator concluded that the County's failure to do so violated the CBA, and he ordered the County to rectify that violation by reinstating the deputies pursuant to their seniority. The arbitrator's analysis of the interplay between the CBA's provisions regarding layoffs and abolishing positions may or may not be correct, but it is precisely within the scope of his contractual authority to resolve "[a]ll disputes concerning the proper interpretation and application of" the CBA. *See City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009) ("An arbitrator derives his power from the parties' agreement to submit to arbitration . . . .").

Common-law grounds for vacating an arbitration award are exceedingly narrow and do not include an arbitrator's mere error in applying the law. *See CVN Grp.*, 95 S.W.3d at 238; *see also id.* at 239 (holding that "an arbitrator's mere disagreement with a judge does not violate public policy"); *City of Pasadena*, 292 S.W.3d at 20 (noting that "judicial review of an arbitration award is usually very narrow"). Even assuming the arbitrator erroneously interpreted the CBA, an issue we need not reach, such error does not justify the trial court's judgment vacating the award.

21

## V. Conclusion

We hold that the Jefferson County deputy constables are "police officers" under the Collective Bargaining Act, that the CBA is valid and enforceable, and that the arbitrator did not exceed his authority in ordering the deputies' reinstatement on a seniority basis. Accordingly, we affirm the court of appeals' judgment.

_____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** April 13, 2018