**Opinion filed August 3, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00198-CV

_____

## CHILDREN OF THE KINGDOM, ET AL., Appellants

## V.

## CENTRAL APPRAISAL DISTRICT OF TAYLOR COUNTY, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 12555-D**

## O P I N I O N

Children of the Kingdom and The Koyoe Society, Appellants, appeal a judgment rendered against them for delinquent property taxes.[1] In five issues,

---

[1]Appellants are proceeding on appeal pro se. Although we liberally construe briefs and other filings that are submitted by pro se parties, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with all applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573

Appellants challenge the trial court's subject matter jurisdiction over the underlying tax suit. We affirm.

## I. *Factual and Procedural History*

Children of the Kingdom is the owner of property located in Taylor County; this property is subject to a lien held by The Koyoe Society. The Central Appraisal District of Taylor County (CADTC) assessed property taxes on the property for the years 2020 and 2021; Appellants failed to pay the taxes. CADTC later filed suit to recover the delinquent property taxes, including all penalties, interest, attorney's fees, and costs. After filing suit, CADTC made at least seven attempts to personally serve citation of the delinquent taxes and the suit on Appellants. However, each attempt was unsuccessful. Accordingly, CADTC filed motions for substituted service of citation pursuant to Rule 106(b) of the Texas Rules of Civil Procedure. The trial court granted the motions and ordered substitute service of citation. Pursuant to the authority granted by the trial court's order, CADTC thereafter served the citation of delinquent taxes and the underlying suit upon Appellants through substitute service on February 28, 2022 and April 8, 2022, respectively.

The trial of the underlying lawsuit was set for June 10, 2022; Appellants failed to appear. At trial, CADTC offered certified copies of CADTC's tax rolls that showed the delinquent tax amounts that were due and owing for the subject property. The subject property was described as follows:

> **Tract: 1**
> Account Number: 53611
> Property Description: The East half of Lot 3 less the East 436.5' of the North 52.4', Block K, Section 2, Lytle Shores Addition, Taylor County, Texas
> Deed Reference: Document #202005755 of the Official Public Records, Taylor County, Texas

S.W.2d 181, 184–85 (Tex. 1978); *Aaron v. Fisher*, 645 S.W.3d 299, 312 (Tex. App.—Eastland 2022, no pet.).

Assessed Name: CHILDREN OF THE KINGDOM

$31,953.58   Due to Central Appraisal District of Taylor County
For Tax Years: 2020-2021
$31,953.58   TOTAL DUE (06/2022)
$441,345.00   MARKET VALUE

**TOTAL AMOUNTS DUE**

$31,953.38   Due to Central Appraisal District of Taylor County
$255.00   Title Research Fee
$32,178.58   **TOTAL DUE (06/2022)**

After it considered the evidence, the trial court granted judgment in favor of CADTC for the delinquent amounts. This appeal followed.

## II. *Standard of Review*

"Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is a question of law that we review de novo. *Id.*

## III. *Analysis*

In five issues, Appellants challenge the subject matter jurisdiction of the trial court to enter a default judgment against them for the delinquent property taxes.

### A. *Standing*

In their first and fourth issues, Appellants challenge the standing of the CADTC to bring this claim for the collection of delinquent property taxes. Appellants proffer two arguments to support their standing issue. First, Appellants argue that CADTC lacks standing because Appellants have presented a federal question—the assessment of property taxes interferes with Appellants' right to freely practice their religion. We note at the outset that Appellants' argument does not pertain to standing, which implicates a plaintiff's ability to initiate a suit. Rather,

this argument is more broadly an issue of subject matter jurisdiction, which implicates the trial court's ability to hear and decide a suit.[2]

Federal question jurisdiction provides federal courts with jurisdiction over civil actions "arising under" the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Under the well-pleaded complaint rule, a suit "arises under" federal law for purposes of Section 1331 "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Here, the plaintiff in the underlying suit is CADTC. CADTC's cause of action is a suit to collect delinquent *state* taxes, which is undeniably a state law matter that is best adjudicated and enforced by state courts. Appellants' argument—that the assessment of taxes interferes with their right to freely exercise their religious beliefs—would, if anything, arguably constitute a defense to the collection of taxes assessed against their property. Thus, no question of federal law is implicated by CADTC's suit, and the trial court properly concluded that it could exercise subject matter jurisdiction to hear and adjudicate CADTC's cause of action.

Second, Appellants argue that CADTC lacks standing to sue because they have not suffered an injury. Standing is a constitutional prerequisite to maintaining suit. *Jefferson Cnty. v. Jefferson Cnty. Constables Ass'n*, 546 S.W.3d 661, 666 (Tex. 2018). Standing consists of some interest that is peculiar to the aggrieved person individually and not as a member of the general public. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). In other words, standing requires a concrete injury to the claimant and the existence of a real controversy between the parties that will be resolved by the court. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex.

---

[2]We further note that Appellants cite to the same authority to assert what they believe is the framework for their first and fourth issues. Accordingly, we address those issues together.

2012). Thus, the claimant must be personally injured rather than the public at large. *Id.* at 155. "After all, our Constitution opens the courthouse doors only to those who have or are suffering an injury." *Id.* Standing to sue may be predicated on either statutory or common law grounds. *Aubrey v. Aubrey*, 523 S.W.3d 299, 311 (Tex. App.—Dallas 2017, no pet.); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 850 (Tex. App.—Fort Worth 2005, no pet.).

When standing is conferred by statute, the common-law criteria regarding standing does not apply. *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding); *see also Zaatari v. City of Austin*, 615 S.W.3d 172, 182–83 (Tex. App.—Austin 2019, pet. denied) (stating that common-law standards are not dispositive if the Legislature has conferred standing by statute). "In statutory standing cases, . . . the analysis is a straight statutory construction of the relevant statute to determine upon whom the Texas Legislature conferred standing and whether the claimant in question falls in that category." *Sullivan*, 157 S.W.3d at 915; *see also Nephrology Leaders & Assocs. v. Am. Renal Assocs., LLC*, 573 S.W.3d 912, 915–16 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (stating that courts must determine whether the plaintiff has established that he has been injured or wronged within the parameters of the relevant statutory language); *Everett*, 178 S.W.3d at 851 (stating that, "[w]hen standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis").

Here, constitutional and statutory authority provide standing to CADTC to sue Appellants to recover the delinquent property taxes. The Texas constitution provides that "[a]ll real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." TEX. CONST. art. VIII, § 1(a), (b).

5

The Texas constitution further authorizes the Texas Legislature to create laws for the collection of delinquent property taxes. *Id.* § 15.

In furtherance of these constitutional commands, the Legislature has enacted a detailed and comprehensive statutory scheme that governs the ascertainment of the value of taxable property and the method for its collection. *See Pecos Cnty. Appraisal Dist. v. Iraan-Sheffield Indep. Sch. Dist.*, No. 22-0313, 2023 WL 3556711, at *1 (Tex. May 19, 2023). Central to this regime are the appraisal districts which are established in each county and are responsible for appraising property within its territorial boundaries for taxation assessment purposes. *Id.* (citing TEX. TAX CODE ANN. §§ 6.01(a), (b); 23.01(a), (b), (f), (h) (West 2015); 23.0101–.013 (West 2021)). In addition to their primary appraisal responsibility, an appraisal district may, by contract with the county or other taxing unit, assess and collect taxes on behalf of the county or other taxing units. TAX § 6.24. The collection of taxes naturally includes those taxes that become delinquent because of nonpayment. To assist in the collection of delinquent taxes, the Tax Code provides that "a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both." *Id.* § 33.41(a).

Pursuant to constitutional and statutory authority, CADTC exercised its power to collect delinquent property taxes by bringing suit against Appellants. CADTC is not required to prove a concrete and particularized injury, as Appellants assert, because the common-law criteria does not apply when a statute confers such authority upon an appraisal district to bring suit. Thus, CADTC has standing to bring suit against Appellants for the collection of the delinquent taxes. Accordingly, we overrule Appellant's first and fourth issues.

6

B.  *Service of Process*

In their second issue, Appellants assert that CADTC failed to properly serve them with process.  Appellants first argue that the property in question is held by a private trust and that the trust instruments were never served.  However, Appellants have neither cited nor referred to any facts from the appellate record to support their argument.[3]  *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").  The record shows that the owner of the property to which the taxes were assessed is Children of the Kingdom, a corporation, and that The Koyoe Society, a corporation, holds an active lien on the property.  Appellants' argument must be supported by facts contained in the appellate record.  *See Perry v. S.N.*, 973 S.W.2d 301, 303 (Tex. 1998) ("We may not consider factual assertions that appear solely in the appellate briefs and not before the trial court."); *see also Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 199 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("A party asserting error on appeal bears the burden of showing that the record supports the contention raised, and of specifying the place in the record where matters upon which he relies or of which he complains are shown.").  Here, it is not.  In fact, and contrary to Appellants' assertion, the record before us shows that the property and the lien are held by two corporations, not a trust.

---

[3]Appellants have attached appendices to their brief that include documents that are not contained in the appellate record.  *See* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record").  "An appendix is not a substitute for a clerk's record nor are citations to the appendix a substitute for citations to the record." *Jackson v. Citibank (S. Dakota), N.A.*, 345 S.W.3d 214, 214 (Tex. App.—Dallas 2011, no pet.) (mem. op.); *see also Bell v. State for S.E.G.*, 659 S.W.3d 21, 24 (Tex. App.—El Paso 2021, pet. denied).  Therefore, because the appendices are not part of the appellate record, we cannot and do not consider them. *See Creekside Rural Invs., Inc. v. Hicks*, 644 S.W.3d 896, 906 n.5 (Tex. App.—Eastland 2022, no pet.); *see also Bell*, 659 S.W.3d at 24; *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("we cannot consider documents attached as appendices to briefs and must consider a case based solely upon the record filed").

Appellants also argue that they were never served with citation. Under the Texas Rules of Civil Procedure, citation must generally be served by (1) delivering in person to the defendant a copy of the citation, showing the delivery date, and of the petition; or (2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition. TEX. R. CIV. P. 106(a). When service through the above method is ineffective, the trial court may authorize service in any other manner that a sworn statement or other evidence shows will be reasonably effective to give the defendant notice of the suit—substituted service. TEX. R. CIV. P. 106(b)(2).

Generally, Texas law prefers personal service over substituted service. *Pirate Oilfield Servs., Inc. v. Cunningham*, 631 S.W.3d 421, 429 (Tex. App.—Eastland 2021, no pet.) (citing *Creaven v. Creaven*, 551 S.W.3d 865, 870 (Tex. App.—Houston [14th Dist.] 2018, no pet.)). "When the plaintiff uses substituted service, Texas law places a burden on the plaintiff to prove that he or she served the defendant in the manner required by the applicable rule." *Creaven*, 551 S.W.3d at 870 (citing *Vespa v. Nat'l Health Ins. Co.*, 98 S.W.3d 749, 751 (Tex. App.—Fort Worth 2003, no pet.)). When a trial court authorizes and orders substituted service, the only authority for the service is the order itself; therefore, "any deviation from the trial court's order necessitates a reversal of the default judgment based on [defective] service." *Id.*; *see Spanton v. Bellah*, 612 S.W.3d 314, 316–18 (Tex. 2020). Strict compliance with the rules of service—and in this case, with the court order—does not necessarily mean "obeisance to the minutest detail." *Pirate Oilfield Servs., Inc.*, 631 S.W.3d at 429; *see also Spanton*, 612 S.W.3d at 317.

An important purpose of requiring service of process is to give citizens the opportunity to receive fair notice of pending legal proceedings, and appellate review is designed to examine the fairness of that effort. *Pirate Oilfield*, 631 S.W.3d at 429.

"It is the service, and not the return, which gives the [trial] court jurisdiction over the defendant. . . . The return of citation is but the certificate of the officer as to where, when and how it was executed." *Walker v. Brodhead*, 828 S.W.2d 278, 282 (Tex. App.—Austin 1992, writ denied) (alteration in original) (quoting *Gunter's Unknown Heirs & Legal Representatives v. Lagow*, 191 S.W.2d 111, 113 (Tex. App.—Austin 1945, writ ref'd)). "As long as the record as a whole, including the petition, citation, and return, shows that the citation was served on the defendant in the suit, service of process will not be invalidated." *Williams v. Williams*, 150 S.W.3d 436, 444 (Tex. App.—Austin 2004, pet. denied).

In this case, the record shows that the trial court ordered and authorized substituted service of citation for both Children of the Kingdom and The Koyoe Society based upon the process server's affidavits that detailed his inability to serve Appellants personally at the address provided by them and that were on file. Both orders for substituted service of citation identify the address for service as "3497 FM 603, Clyde, Texas 79510-6007" and require service "at the location(s) described in the Officer's Affidavit, which is the Defendant's usual place of abode."

The process server's first affidavit identifies the address for Children of the Kingdom as 3497 FM 603, Clyde, TX 79510 and describes the location as follows: "When I arrived it was clear that the location was not a residence but an empty, barbed wired field with a mailbox in front of the northeasterly post. The mailbox was clearly marked with the Defendant's address." The process server's second affidavit identifies the Children of the Kingdom's address as 3497 FM 603, Clyde, TX 75910 and described the location as follows: "When I arrived at the address there was only a fenced in plot of land. In front of that land, off of the road, was a mailbox." Pursuant to the trial court's order, the return of citation indicates that the first citation was delivered to Children of the Kingdom through its registered agent,

Lim Muwdyan, on February 28, 2022, at 2:15 p.m. at 3497 FM 603, Clyde, TX 79510 by affixing or posting a true copy of the citation and the order for substitute service to the mailbox of Appellant's (Children of the Kingdom's) residence at the above address. Similarly, the second citation was delivered to The Koyoe Society through its registered agent, Lim Muwdyan, on April 8, 2022, at 6:40 p.m. at 3497 FM 603, Clyde, TX 79510 by affixing or posting a true copy of this citation and the order for substitute service to the front door of Appellant's (The Koyoe Society's) residence at the above address.

Appellants do not contend that either address was incorrect. Nor do they advance any argument that the manner in which service was effectuated did not correspond to or failed to comply with the trial court's order for substituted service. Appellants merely argue that service was never *issued*. From the face of the record, we can determine that service was issued and where service was effectuated. The record, reviewed as a whole, establishes that the address for service in the trial court's order refers to the same address where service was effectuated. The returns of service verify that the citations were executed at the address as it appears throughout the record. Although the process server's first affidavit describes a plot of land with only a mailbox, and thus no front door, we can be sure of the exact address where service actually occurred, which corresponds to the address that is found and referred to throughout the record. For these reasons, Appellants failed to establish that service was never issued.

Finally, Appellants complain that the only notice they received from the trial court was a notice of hearing that was served by Appellee's attorney. Appellants claim that Appellee's attorney is an interested party in the underlying suit and thus is not permitted to serve documents under Rule 103 of the Texas Rules of Civil Procedure. Rule 103 is titled "Who May Serve" and governs who may serve a

*citation* in a civil proceeding. TEX. R. CIV. P. 103. Appellants complain because the notice of *hearing* was served by Appellee's attorney. The method for serving a notice of a court proceeding, including a *hearing*, is governed by Rule 21. *See* TEX. R. CIV. P. 21(b); 21d(a)(1) ("Court proceeding" means an appearance before the trial court, such as a hearing or trial). Those who may serve notice of a *hearing* as required by Rule 21 is governed by Rule 21a which states that "[n]otice may be served by a party to the suit, *an attorney of record*, a sheriff or constable, or by any other person competent to testify." TEX. R. CIV. P. 21a(d) (emphasis added). Thus, Appellee's attorney was authorized to serve Appellants with the notice of hearing. Accordingly, we overrule Appellants second issue.

C. *Free Exercise Clause*

In their third issue, Appellants argue that the trial court lacked subject matter jurisdiction to decide the matters raised in this suit "due to a matter of religious conscience." Appellants' present two primary arguments in support of this issue: (1) Appellants have not (a) entered, and cannot as a matter of religious conscience enter, into any contracts with the State of Texas or (b) consented to the assessment of taxes on their property; and (2) Appellants cannot submit an application for a property tax exemption because it is against their religious beliefs to enter into agreements or to accept any benefits from the government.

First, Appellants need not have a contract with the State of Texas because a contract is not the source of liability for one's property tax obligations. Property tax liability derives from the ownership of property because property taxes, by definition, are tied to one's land or personal property, not to a person or an entity. *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 42 (Tex. 2018) (citing TEX. CONST. art. VIII, § 1(b)). Appellants do not dispute that they are the owners of the property at issue. Thus, Appellants' first argument fails

11

because their ownership in the land is the source of their liability for the property taxes that are due and owing, regardless of the existence of any contract consenting to the assessment of taxes.

Based upon the authority cited by Appellants, we construe Appellants' second argument to be that the Free Exercise Clause of the First Amendment protects their religious belief to not enter into written agreements with the government; thus, they would not be required to file an application for a property tax exemption in order to not be held liable for the payment of property taxes. The First Amendment to the United States Constitution declares that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. AMEND. I. The First Amendment is applicable to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). In *Cantwell*, the Supreme Court explained the First Amendment's inhibition of legislation on religion as follows:

> The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus the Amendment embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.

*Id.* at 303–04. Thus, an individual's religious beliefs do not excuse him from compliance with an otherwise valid law that prohibits (or requires) conduct that the State is free to regulate. *Emp't Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–79 (1990).

The freedom to act according to one's chosen religious beliefs may be burdened by government action in two respects: (1) through governmental interference with an individual's observance of the practice of a particular faith and (2) through governmental encroachment on the church's ability to manage its internal affairs. *C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) ("the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons"); *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952) (the Free Exercise Clause protects the power of religious organizations "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine")).

When the actions of the legislature impose on an individual's observance of the practice of a particular faith, we begin by examining whether the law in question is specifically directed at a religious practice. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 531. If the law is found to be "neutral and of general applicability," i.e., not directed at a religious practice, then the law "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* A law is neutral if its purpose is not to infringe upon or restrict one's practices because of their religious motivation. *Id.* at 533. The principle of general applicability protects religious observers against unequal treatment. *Id.* at 542–43. "[I]nequality results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." *Id.*

The requirement that one must file an application for a tax exemption is neutral and generally applicable. In Texas, the taxation scheme is based on the

foundational principle that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). In applying this principle, the Texas constitution provides that all real property in the state of Texas shall be taxed in proportion to its value "unless exempt as required or permitted by this Constitution." *Id.* § 1(b). The Texas constitution requires and provides for certain exemptions—such as the exemptions provided for religious organizations—and specifies additional exemptions that it permits the Legislature to adopt by statute. *See, e.g., id.* § 2(a), 1(d). But the Texas constitution also provides that "all laws exempting [other] property from taxation . . . shall be null and void." *Id.* § 2(a). Thus, property tax exemptions are limited and must meet the requirements specified in the Texas constitution.

To receive a property tax exemption, a person must apply for an exemption by filing an exemption application with the chief appraiser for each appraisal district in which the property that is subject to the claimed exemption is situated. TAX § 11.43 (West Supp. 2022). Exemptions are subject to strict application and cannot be raised by implication because "they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021). "The taxpayer has the burden to 'clearly show' that an exemption applies, and all doubts are resolved against the granting of an exemption." *Id.* at 541 (quoting *Tex. Student Housing Auth. v. Brazos Cnty. Appraisal Dist.*, 460 S.W.3d 137, 140–41 (Tex. 2015)).

Here, Appellant asserts that the requirement that one must file an application for a property tax exemption violates their rights guaranteed by the Free Exercise Clause, because it is their religious belief to be governed separately from secularism and thus not enter into any agreement or accept any privilege from secular

14

governments. We disagree with Appellants assertion and hold that this requirement does not violate their First Amendment rights.

First, the exemption application requirement is neutral. It is not specifically directed at or to a religious practice; instead, the requirement is a means of protecting the equality and uniformity of the property tax scheme as guaranteed by the Texas constitution. Second, the requirement is generally applicable. *All taxpayers* who seek an exemption from paying property taxes must apply for an exemption. Thus, Appellants' rights under the Free Exercise Clause have not been infringed upon because the requirement to file an application for a property tax exemption has only an incidental effect, if any, of burdening Appellants' religious practices. *See, e.g., Emp't Div., Dep't of Human Res. of Oregon*, 494 U.S. at 878 ("It is no more necessary to regard the collection of a general tax, for example, as 'prohibiting the free exercise [of religion]' by those citizens who believe support of organized government to be sinful, than it is to regard the same tax as 'abridging the freedom . . . of the press' of those publishing companies that must pay the tax as a condition of staying in business. It is a permissible reading of the text, in the one case as in the other, to say that if prohibiting the exercise of religion (or burdening the activity of printing) is not the object of the tax but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended."). Such is the case here.

Because Appellants did not apply for a property tax exemption as required by the Tax Code, Appellants are liable for the payment of property taxes associated with the real property at issue. Therefore, the trial court properly exercised its subject matter jurisdiction over the underlying tax suit. Accordingly, we overrule Appellants' third issue.

D. *Immunity of a Foreign State*

In their fifth issue, Appellants argue that they have immunity from suit as a foreign state because Appellants "have declared its separation based on matters of conscience as a private and Holy Trust." Appellants have not supported this bare assertion with citations to appropriate authorities or any citations to the appellate record. *See* TEX. R. APP. P. 38.1, 34.1; *see also supra* note 1. Because the record does not support their arguments and Appellants have failed to adequately brief this issue on appeal, we overrule Appellants' fifth issue. *See* TEX. R. APP. P. 38.1(i).

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

August 3, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.