**Affirmed and Opinion filed May 6, 2021.**



In The

# Fourteenth Court of Appeals

NO. 14-18-00976-CV
NO. 14-18-00990-CV

**CITY OF HOUSTON, TEXAS, Appellant**

**V.**

**HOUSTON PROFESSIONAL FIRE FIGHTERS' ASSOCIATION, LOCAL 341, Appellee**

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2017-42885**

## OPINION

The City of Houston (the "City") appeals the denial of its interlocutory plea to the jurisdiction based on governmental immunity in case number 14-18-00990-CV. The City also appeals the interlocutory denial of its motion for summary judgment based on the unconstitutionality of Texas Local Government Code section 174.252 in case number 14-18-00976-CV. We affirm the trial court's

orders denying the City's plea to the jurisdiction and motion for summary judgment.

## BACKGROUND

This case arose after the City and the Houston Professional Firefighters' Association, Local 341 (the "Association") negotiated but failed to reach a collective bargaining agreement regarding Houston fire fighters' compensation, hours, and other working conditions pursuant to The Fire and Police Employee Relations Act (the "Act"). *See* Tex. Loc. Gov't Code Ann. §§ 174.001-.253.

The Act is codified in chapter 174 of the Texas Local Government Code and provides fire fighters and police officers of a political subdivision the right to organize and collectively bargain with their public employers regarding their compensation and employment conditions (which should be substantially the same as compensation and conditions of employment prevailing in comparable private sector employment). *See id.* §§ 174.002(a), (b); 174.021.

The City and the Association entered into a collective bargaining agreement in 2011, which was set to terminate on December 31, 2016. In August 2016, both parties agreed to extend the agreement until June 30, 2017, at which time the agreement would terminate. In the meantime, the Association sent the City a written notice (as required by the Act) in January 2017; this notice requested "collective bargaining to negotiate wages, rates of pay, benefits, and working conditions requiring the appropriation of monies that would have an impact on the next fiscal year's operating budget." *See id.* § 174.107. In February 2017, the City and the Association agreed to several "ground rules for the negotiations regarding a Collective Bargaining Agreement ("CBA") pursuant to the Fire and Police Employee Relations Act," including "the principle of good faith bargaining . . . to reach a mutual agreement that is consistent with the intent and purpose of Chapter

2

174."

After bargaining for 60 days, the parties failed to reach a collective bargaining agreement. The Association sent the City a letter in May 2017, stating that the parties reached an impasse (as defined in the Act) regarding a successor agreement to the 2011 collective bargaining agreement and requesting arbitration pursuant to the Act. Specifically, the letter stated:

> Pursuant to Texas Local Government Code § 174.152, the 60-day statutory impasse deadline has arrived. Having begun bargaining on March 14, 2017 and failing to reach agreement by May 14, 2017, under law, the City of Houston and the Houston Professional Fire Fighters Association are at impasse regarding a successor agreement to the 2011 CBA [Collective Bargaining Agreement].
>
> The Houston Professional Fire Fighters Association, Local 341 . . . on behalf of all Houston fire fighters requests arbitration to resolve the remaining issues in dispute. Pursuant to section 174.153, [the Association] specifies the following issues to be in dispute:
>
> - Compensation;
> - Hours of work;
> - Overtime;
> - Paid leaves, including sick leave and vacation leave;
> - Staffing; and
> - Dispute resolution (commonly referred to as the grievance procedure).

The City did not agree to arbitrate, and the Act does not require compulsory arbitration. Instead, the City suggested mediation, and the parties proceeded to mediate unsuccessfully.

On June 28, 2017, the Association sued the City for allegedly violating section 174.021. Specifically, the Association alleged the City was failing to provide fire fighters with substantially equal compensation and conditions of

3

employment that prevailed in comparable private sector employment. *See id*. § 174.021. The Association sought judicial enforcement (in accordance with section 174.252) and asked the trial court to declare the compensation and other conditions to which the fire fighters were entitled under section 174.021. *See id*. § 174.252. In August 2017, the City filed an original answer, special exceptions, and amended special exceptions to the Association's original petition.

The trial court signed an order on October 12, 2017 that required the Association to amend its petition and to re-plead facts (1) supporting its claim that the City failed to bargain in good faith; (2) specifying which issues remained unresolved when the parties reached an impasse; and (3) identifying "the relief claimed to 'make whole' the employees, including any compensation or conditions of employment which were changed or eliminated." The Association then filed an amended petition, and the City filed an answer thereto.

The Association filed a motion for summary judgment on the City's governmental immunity defense in November 2017. In September 2018, the City filed a plea to the jurisdiction and cross-motion for summary judgment (1) asking the trial court to dismiss the case for lack of jurisdiction and (2) arguing (a) the Association failed to establish a waiver of immunity because it did not bargain or negotiate in good faith "for 'wages, benefits, or conditions of employment' under the private sector labor standards provisions of the statute" and (b) absent "proof that employment compensation and conditions [are] less than those enjoyed by similar private sector firefighters," the Association cannot establish "the statutory condition required for this Court's jurisdiction under Chapter 174." The City also asked the trial court to dismiss the case for want of jurisdiction with regard to "any subjects which are not mandatory subjects for bargaining under Texas law", contending the Association failed to plead facts establishing each of the bargaining

subjects were mandatory subjects under the Act.

Additionally, the City moved for summary judgment on grounds that (1) the Association did not bargain in good faith when it failed to bargain for compensation or benefits based upon private sector labor standards or comparators and therefore there is immunity from suit; (2) there is no evidence that the items set out by the Association in their pleading "were mandatory subjects of bargaining" and therefore the trial court has "no jurisdiction to determine or enforce any . . . topics as listed by the Association as having reached" impasse; and (3) section 174.252 violates the separation of powers provision in the Texas Constitution "because it delegates the exclusively legislative power to declare the compensation of public officers to the judiciary without prescribing sufficient and adequate standards to guide the discretion conferred."

The Association filed its response to the City's plea to the jurisdiction and cross-motion for summary judgment on October 15, 2018. Four days later, the City filed a reply. The trial court held a hearing on the City's plea to the jurisdiction and cross-motion for summary judgment on October 22, 2018. After the hearing, the trial court signed an order denying both but granting the Association's summary judgment motion concerning governmental immunity. The trial court also signed an "Order Granting Tex. Civ. Prac. & Rem. Code § 51.014(d) Joint Motion for Written Order Permitting Interlocutory Appeal of Order Denying Defendant City of Houston's Motion for Summary Judgment with Respect to Constitutionality of Tex. Loc. Gov't Code §§ 174.021 and 174.252." The order states in relevant part:

> It is ORDERED, ADJUDGED and DECREED that the Joint Motion for Written Order Permitting Interlocutory Appeal of Order Denying Defendant City of Houston's Motion for Summary Judgment with Respect to Constitutionality of Tex. Loc. Gov't Code §§ 174.021 and

174.252 is hereby granted.

This Court denies the motion for summary judgment filed by Defendant City of Houston asserting that Tex. Loc. Gov't Code §§ 174.021 and 174.252 are unconstitutional as constituting an unconstitutional delegation of legislative authority (the "Order"). This Court finds that the Order to be appealed involves the following controlling questions of law as to which there is a substantial ground for difference of opinion based on the decisions in *International Association of Firefighters, Local No. 2390 v. City of Kingsville*, 568 S.W.2d 391 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.) and *City of Port Arthur v. International Ass'n of Fire Fighters, Local 397*, 807 S.W.2d 894 (Tex. Civ. App.—Beaumont 1991, writ denied):

1. WHETHER OR NOT TEX. LOC. GOV'T CODE §§ 174.021 AND 174.252 ARE CONSTITUTIONAL

2. WHETHER OR NOT TEX. LOC. GOV'T CODE §§ 174.021 AND 174.252 CONSTITUTE AN UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE AUTHORITY

Immediate appeal of the constitutional issue would terminate threshold uncertainty concerning the validity of the statutory provisions and the constitutionality of the claims asserted by Plaintiff and would streamline and narrow issues to be resolved at the trial on the merits and the relief, if any, that can or cannot be afforded by this Court. Immediate appeal of the Order with respect to constitutionality may also facilitate resolution by settlement because the parties would be afforded some degree of certainty of the constitutionality issues. For these reasons, this Court finds that an immediate appeal for the Order with respect to constitutionality may materially advance the ultimate termination of the litigation

On November 6, 2018, the City filed a petition for permission to appeal the trial court's October 22, 2018 order denying the City's motion for summary judgment pursuant to section 51.014(f) of the Civil Practices and Remedies Code. In its petition, the City asserted that Texas Local Government Code sections 174.021 and 174.252 are unconstitutional delegations of legislative authority and that the requirements for a permissive appeal are met in this case. That appeal was assigned to this court under case number 14-18-00976-CV. The Association filed

a response indicating that it did not oppose the petition for permission to appeal.

On November 12, 2018, pursuant to section 51.014(a)(8) of the Civil Practices and Remedies Code, the City filed a notice of interlocutory appeal from the trial court's October 22, 2018 order denying its plea to the jurisdiction. That appeal was assigned to this court under case number 14-18-00990-CV. On November 27, 2018, this court (in a per curiam order) consolidated case number 14-18-00976-CV with case number 14-18-00990-CV, stating that both "involve the same suit and the same order signed by the trial court on October 22, 2018[.]"

On September 1, 2020, this court granted the City's petition for permission to appeal, provided notice to the Texas Attorney General (pursuant to Texas Government Code section 402.010) that the City filed a petition for permission to appeal challenging the constitutionality of sections 174.021 and 174.252, requested the Texas Attorney General to weigh in on the issues presented in the petition for permission to appeal by September 30, 2020, and abated the appeals. The court did not receive the requested briefing. The court then granted the Association's motion to reinstate the appeals and set a briefing schedule on October 27, 2020.

### ANALYSIS

We begin our analysis with the City's challenge to the trial court's denial of its plea to the jurisdiction based on governmental immunity in the interlocutory appeal in case number 14-18-00990-CV; we then address the City's arguments challenging the constitutionality of section 174.252 presented in the permissive appeal in case number 14-18-00976-CV.

### I.    Plea to the Jurisdiction

In two issues, the City contends that the trial court erroneously denied its plea to the jurisdiction because (1) the Act's governmental immunity waiver

7

"requires good faith collective bargaining based on prevailing private sector comparators for compensation and other conditions of employment", and (2) the "City's evidence supporting its plea to the jurisdiction conclusively showed that Association bargaining with the City was not based on private sector comparator compensation."

## A.     Standard of Review and Governing Law

Governmental immunity and sovereign immunity are related common law doctrines protecting the government from suit. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018); *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). Sovereign immunity protects the state and its various divisions (such as agencies and boards) from suit and liability while governmental immunity provides similar protection to the political subdivisions of the state (such as counties, cities, and school districts). *Annab*, 547 S.W.3d at 612; *Norman*, 342 S.W.3d at 57-58; *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). An assertion of governmental immunity implicates a court's subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *Annab*, 547 S.W.3d at 613; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). A plea questioning the trial court's jurisdiction raises a question of law that is reviewed *de novo*. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

A plea to the jurisdiction can challenge either the pleadings or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226-27; *City of Houston v. Ranjel*, 407 S.W.3d 880, 887 (Tex. App.—Houston [14th Dist.] 2013, no pet.). When a plea to the jurisdiction challenges a plaintiff's pleadings, the determination pivots on whether the pleader has alleged sufficient facts to demonstrate the court's subject matter jurisdiction over the matter. *Miranda*, 133 S.W.3d at 226-27. We

construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Annab*, 547 S.W.3d at 612-13; *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). A plaintiff generally will not be required to marshal evidence and prove a claim just to overcome a plea to the jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action. *Kirwan*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 227. If the evidence creates a fact issue as to the jurisdictional issue, then it is for the factfinder to decide. *Kirwan*, 298 S.W.3d at 622. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*.

## B.    Waiver of Governmental Immunity

The City claims that "without good faith collective bargaining based on prevailing private sector comparators for compensation, and other conditions of employment, there is no waiver." The City argues that the governmental immunity waiver provided in the Act is narrow in that it requires (as a condition precedent)

9

that the Association engaged in good faith collective bargaining based on private sector labor standards "consistent with" sections 174.021 and 174.105. According to the City, the Legislature did not intend a court to have jurisdiction over a suit under the Act "to resolve unsettled § 174.021 compensation issues without prima facie proof by publicly employed firefighters (or police) of compensation bargaining based on private sector comparators."

The Legislature must use clear and unambiguous language indicating its intent to waive governmental immunity. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010); *Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009).[1] Whether the Legislature has imposed conditions precedent to a waiver of governmental immunity is a matter of statutory interpretation. *See Jefferson Cty. v. Jefferson Cty. Constables Ass'n*, 546 S.W.3d 661, 667 (Tex. 2018). "In construing the Act, as with any statute, our primary objective is to give effect to the Legislature's intent." *Id*. We begin with the "ordinary meaning of the statutory text." *In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014) (orig. proceeding). "We analyze statutory language in context, considering the specific section at issue as well as the statute as a whole." *CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 232 (Tex. 2013).

---

[1] *See also* Tex. Gov't Code Ann. § 311.034. The Code of Construction Act provides:

§ 311.034. Waiver of Sovereign Immunity

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction. Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

*Id*.

"We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Here, the Legislature has further instructed that the Act "shall be liberally construed." Tex. Loc. Gov't Code Ann. § 174.004. Applying these principles, we conclude the Act (1) waives the City's governmental immunity for the Association's claim under section 174.252 and (2) does not impose as a condition precedent good faith collective bargaining based on private sector labor standards.

The Act implements several express policies. *See Jefferson Cty.*, 546 S.W.3d at 667. First, it mandates "that a political subdivision shall provide its fire fighters and police officers with compensation and other conditions of employment that are substantially the same as compensation and conditions of employment prevailing in comparable private sector employment." *See* Tex. Loc. Gov't Code Ann. § 174.002(a). Second, "it gives fire fighters and police officers 'the right to organize for collective bargaining' as 'a fair and practical method for determining compensation and other conditions of employment.'"[2] *See Jefferson Cty.*, 546 S.W.3d at 667 (quoting Tex. Loc. Gov't Code Ann. § 174.002(b)). Third, "despite granting this right, the Act stops short of allowing these employees to engage in strikes and other work stoppages"; instead, it provides "'reasonable alternatives' like arbitration and judicial enforcement of the Act's requirements." *Id.* (quoting

---

[2] A majority of fire fighters of the fire department of the political subdivision, or a majority of police officers of the police department of the political subdivision, may select an association to function as its exclusive bargaining agent. *Id.* §§ 174.101, 174.102. If the fire fighters or police officers of a political subdivision are represented by such an association, the public employer and the association "shall bargain collectively", and the association may enter into a collective bargaining agreement with the public employer on behalf of the fire fighters or police officers. *Id.* § 174.105. If a public employer and an association reach a collective bargaining agreement under the Act, the agreement "is binding and enforceable against a public employer, an association, and a fire fighter or police officer covered by the agreement." *Id.* § 174.109.

11

Tex. Loc. Gov't Code Ann. § 174.002(c), (d)). "The provision of alternatives to strikes is intended to protect the 'health, safety, and welfare of the public' in light of 'the essential and emergency nature of the public service performed by fire fighters and police officers.'" *Id*. at 667-68 (quoting Tex. Loc. Gov't Code Ann. § 174.002(c), (d)).

As applicable in this case, the Act waives the City's governmental immunity to ensure judicial enforcement of the Act's requirements in section 174.021. *See* Tex. Loc. Gov't Code Ann. §§ 174.008, 174.252. The clear statutory language regarding waiver of governmental immunity, viewed in context, lends no support to the City's assertion that without good faith collective bargaining based on prevailing private sector comparators, "subject matter jurisdiction does not exist under §§ 174.008 and 174.252 to waive immunity from suit."[3] Together, these two

---

[3] *See id.* §§ 174.008, 174.252. Section 174.008, titled "Waiver of Immunity", expressly provides: "This chapter is binding and enforceable against the employing public employer, and sovereign or governmental immunity from suit and liability is waived only to the extent necessary to enforce this chapter against that employer." *Id*. § 174.008. Further, section 174.252, titled "Judicial Enforcement When Public Employer Declines Arbitration", provides:

(a) If an association requests arbitration as provided by Subchapter E and a public employer refuses to engage in arbitration, on the application of the association, a district court for the judicial district in which a majority of affected employees reside may enforce the requirements of Section 174.021 as to any unsettled issue relating to compensation or other conditions of employment of fire fighters, police officers, or both.

(b) If the court finds that the public employer has violated Section 174.021, the court shall:

(1) order the public employer to make the affected employees whole as to the employees' past losses;

(2) declare the compensation or other conditions of employment required by Section 174.021 for the period, not to exceed one year, as to which the parties are bargaining; and

(3) award the association reasonable attorney's fees.

(c) The court costs of an action under this section, including costs for a master if one is appointed, shall be taxed to the public employer.

12

sections unambiguously waive the City's governmental immunity with respect to the Association's claim (1) brought under section 174.252; (2) to enforce the requirements of section 174.021 as to any unsettled issue relating to compensation or other employment conditions of fire fighters; and (3) after an impasse in the collective bargaining process occurred between the City and the Association and the City refused to engage in arbitration. *See* Tex. Loc. Gov't Code Ann. §§ 174.008, 174.252; *cf. Stines v. Jefferson Cty.*, 550 S.W.3d 178, 179-80 (Tex. 2018) (per curiam); *Jefferson Cty. v. Stines*, 523 S.W.3d 691, 713, 720-21 (Tex. App.— Beaumont 2017), *rev'd in part and vacated in part*, 550 S.W.3d 178 (Tex. 2018). There is nothing in sections 174.008 and 174.252 (or in any other statutory provision of the Act) that would support the City's contention that the Act's governmental immunity waiver requires good faith collective bargaining based on private sector labor standards, nor has the City cited to any applicable authorities.[4]

---

*Id.* § 174.252 (footnote omitted).

[4] The City's reliance on *State v. Lueck*, 290 S.W.3d 876 (Tex. 2009) is misplaced because it is distinguishable. Under the waiver of immunity provision in the Texas Whistleblower Act, sovereign immunity is waived when a public employee alleges "a violation of this chapter", namely chapter 554 of the Texas Government Code. *Id*. at 878 (citing Tex. Gov't Code Ann. § 554.0035). A chapter 554 violation occurs when a governmental entity retaliates against a public employee for making a good faith report of a violation of law to an appropriate law enforcement authority. *Id*. (citing Tex. Gov't Code Ann. § 554.002(a)). The *Lueck* court held that there are two jurisdictional requirements in the waiver of immunity section, so that "[f]or the government's immunity to be waived, the plaintiff must (1) be a public employee, and (2) allege a violation *of this chapter*." *Id*. at 881 (emphasis in original) (citing Tex. Gov't Code Ann. § 554.0035). The court stated that "it necessarily follows from this language that Lueck must actually allege a violation of the Act for there to be a waiver from suit. Therefore, the elements under section 554.002(a) must be considered in order to ascertain what constitutes a violation, and whether that violation has actually been alleged." *Id*. The court concluded that the elements of section 554.002(a) can be considered as jurisdictional facts when it is necessary to resolve whether a plaintiff has alleged a violation under the Act. *Id*.

Here, the Act contains no provision that requires good faith collective bargaining based on prevailing private sector labor standards, and the Association was not required to plead and present evidence that the parties negotiated based on prevailing private sector comparators for compensation and other employment conditions to establish a waiver of governmental immunity

13

Instead, the City cites sections 174.021 and 174.105 to support its contentions.[5] However, neither of these sections imposes a statutory requirement that parties collectively bargain based on private sector labor standards as described in section 174.021 and, thus, lend no support for the City's argument. Specifically, 174.105 lacks any requirement that the parties collectively bargain based on prevailing private sector comparators outlined in section 174.021, and does not even mention "private sector labor standards" or "comparators". *See* Tex. Loc. Gov't Code Ann. § 174.105. Additionally, section 174.021 (titled "Prevailing Wage and Working Conditions Required") lays out a more detailed outline of the required wage and work conditions the Act requires political subdivisions to provide fire fighters and police officers in order to satisfy the Act's policy stated in section 174.002. *See id.* § 174.021. However, it does not mention private sector labor standards in the context of collective bargaining.

---

under the Act. *See also infra* pp. 13-15.

[5] Section 174.105, titled "Duty to Bargain Collectively in Good Faith" states:

(a) If the fire fighters, police officers, or both of a political subdivision are represented by an association as provided by Sections 174.101-174.104, the public employer and the association shall bargain collectively.

(b) For purposes of this section, the duty to bargain collectively means a public employer and an association shall:

(1) meet at reasonable times;

(2) confer in good faith regarding compensation, hours, and other conditions of employment or the negotiation of an agreement or a question arising under an agreement; and

(3) execute a written contract incorporating any agreement reached, if either party requests a written contract.

(c) This section does not require a public employer or an association to:

(1) agree to a proposal; or

(2) make a concession.

Tex. Loc. Gov't Code Ann. § 174.105.

If the Legislature intended to require parties to collectively bargain in good faith based on prevailing private sector compensation and work conditions, it could have easily done so.[6]  Instead, the Legislature allowed for a public employer and an association to reach an agreement that would be deemed to be in compliance with prevailing private sector standards mandated in section 174.021, even if the agreement did not actually comply with the requirements of section 174.021.  *See id*. § 174.022(a).[7]  Thus, the Legislature specifically provided that a public employer is considered to be in compliance with the standards expressed in section 174.021 regardless of whether the collectively bargained-for agreement actually is in compliance therewith.  *See id*.  This undermines the City's argument that the Act imposes a requirement to collectively bargain based on section 174.021 prevailing private sector labor standards.

We conclude that the government's waiver of immunity does not require as a condition precedent that the Association and the City engaged in good faith collective bargaining based on prevailing private sector comparators for compensation and other employment conditions.  We therefore also conclude that

[6] *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008) ("If the Legislature desires to amend the statute to add words so that the statute will then say what is contended for by the Estate, we are confident it will do so.  However, changing the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function.") (citing 67 Tex. Jur. 3d *Statutes* § 85 (2003) (noting that it is for the Legislature, not the courts, to remedy deficiencies, if any, in laws)); *see also RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) ("Courts must take statutes as they find them.  More than that, they should be willing to take them as they find them . . . .  They are not responsible for omissions in legislation.  They are responsible for a true and fair interpretation of the written law.  It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.") (quoting *Simmons v. Arnim*, 220 S.W. 66 (Tex. 1920)).

[7] Section 174.022(a), titled "Certain Public Employers Considered to be in Compliance", states:  "A public employer that has reached an agreement with an association on compensation or other conditions of employment as provided by this chapter is considered to be in compliance with the requirements of Section 174.021 as to the conditions of employment for the duration of the agreement."  *Id*.

15

the Association was not required to present evidence of collective bargaining based on private sector labor standards to establish a waiver of governmental immunity under the Act. Accordingly, we hold the trial court did not err in denying the City's plea to the jurisdiction because the Association properly pleaded a waiver of the City's governmental immunity and invoked the trial court's jurisdiction. We overrule the City's two issues.

## II.     Constitutionality of the Act

We next turn to the City's arguments in the permissive appeal challenging the constitutionality of the Act. The City contends the trial court erred in denying its motion for summary judgment because section 174.252 of the Texas Local Government Code constitutes an unconstitutional delegation of a legislative function to the judiciary in violation of the separation of powers provision in the Texas Constitution. We disagree.

### A.     Standard of Review and Governing Law

We review a trial court's denial of a traditional motion for summary judgment *de novo*. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017). A party moving for traditional summary judgment must establish there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Hansen*, 525 S.W.3d at 681; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). We take all evidence favorable to the nonmovant as true, indulge every reasonable inference, and resolve any doubts in its favor. *See Hansen*, 525 S.W.3d at 681; *Knott*, 128 S.W.3d at 215.

Additionally, when we evaluate the constitutionality of a statute, we start with the presumption that statutes enacted by the Legislature comply with the

16

Texas Constitution. *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020); *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 725 (Tex. 1995).[8] "In line with this presumption, if a statute is susceptible to two interpretations—one constitutional and the other unconstitutional—then the constitutional interpretation will prevail." *Hegar*, 601 S.W.3d at 754 (*citing Key W. Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 849 (Tex. 1961)); *City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009). The party asserting that a statute is unconstitutional bears a high burden. *Hegar*, 601 S.W.3d at 754; *Patel*, 469 S.W.3d at 87.

The Texas Constitution provides for the separation of powers between the executive, legislative, and judicial branches of state government and prohibits one branch of state government from exercising power inherently belonging to another branch. *See* Tex. Const. art. II, § 1; *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001); *City of Houston v. Houston Firefighters' Relief & Ret. Fund*, 502 S.W.3d 469, 474 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The Texas Constitution expressly vests legislative power in the Legislature. *See* Tex. Const. art. III, § 1. "Defining what legislative power is or when it has been delegated is no easy task." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). Texas courts have defined legislative power broadly. *Id*. While it includes the power to set public policy, it also includes "many functions that have administrative aspects, including the power to provide the details of the law, to promulgate rules and regulations to apply the law, and to ascertain conditions upon which existing laws may operate." *Id.*; *see also Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 466-67 (Tex. 1997).

---

[8] *See also* Tex. Gov't Code Ann. § 311.021(1) ("In enacting a statute, it is presumed that: (1) compliance with the constitutions of this state and the United States is intended".)

17

Although the power to pass laws in Texas rests with the Legislature and "cannot be delegated to some commission or other tribunal", "these blanket pronouncements should not be read too literally." *Boll Weevil*, 952 S.W.2d at 466. "Even in a simple society, a legislative body would be hard put to contend with every detail involved in carrying out its laws; in a complex society it is absolutely impossible to do so." *Id*. Therefore, delegation of power to enforce and apply law is not only proper but necessary. *Id*. "Such power must almost always be exercised with a certain amount of discretion, and at times the line between making laws and enforcing them may blur." *Id*. Because no statute can be entirely precise and some judgments, including judgments involving policy considerations, "'must be left to the officers executing the law and to the judges applying it, the debate over constitutional delegation becomes a debate not over a point of principle but over a question of degree.'" *Id*. (quoting *Mistretta v. United States*, 488 U.S. 361, 415 (1989) (Scalia, J., dissenting)).

Generally, the Texas Legislature may delegate its powers so long as it establishes "reasonable standards" to guide the entity or tribunal to which it delegates power. *See FM Props. Operating Co.*, 22 S.W.3d at 873; *Meno*, 917 S.W.2d at 740; *R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992). To satisfy the separation of powers provision, the standards of delegation must be "'reasonably clear and hence acceptable as a standard of measurement.'" *Meno*, 917 S.W.2d at 741 (quoting *Jordan v. State Bd. of Ins.*, 334 S.W.2d 278, 280 (Tex. 1960)). However, the Legislature is not required to include every detail or anticipate every circumstance in statutes when delegating power; such a requirement would defeat the purpose of delegating legislative authority. *See id*. at 740; *Lone Star Gas Co.*, 844 S.W.2d at 689. Broad standards included in legislative delegation may pass constitutional scrutiny, especially when "conditions

18

must be considered which cannot be conveniently investigated by the legislature." *See Lone Star Gas Co.*, 844 S.W.2d at 689.

## B.  Constitutional Delegation of Legislative Power

The City argues that the remedial provision in section 174.252 of the Texas Local Government Code is unconstitutional because "it delegates a legislative function to the judiciary and does not 'prescribe[] sufficient guidelines to guide the District Court's discretion,' as held in *International Ass'n of Firefighters, Local No. 2390 v. City of Kingsville*, 568 S.W.2d 391 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.)."   According to the City, section 174.252 violates the constitution's separation of powers provision because (1) it requires courts to declare fire fighter compensation and other work conditions as mandated by section 174.021 and (2) said section "establishes a private sector standard for compensation and benefits but does not do so with sufficient and adequate safeguards to guide the judicial discretion conferred."

The Legislature's enactment of section 174.252 includes a judicial enforcement provision to ensure that fire fighters have a reasonable alternative to enforce the Act's policy and requirements outlined in sections 174.002 and 174.021.  *See* Tex. Loc. Gov't Code Ann. §§ 174.002, 174.021, 174.252.  The Act's enforcement provision (1) authorizes courts to enforce the requirements of section 174.021 and (2) instructs courts to (a) order the public employer to make the affected employees whole as to the employees' past losses if it finds the public employer violated section 174.021; (b) declare the compensation or other employment conditions required by section 174.021 for a one-year period; and (c) award reasonable attorney's fees.  *See id*. § 174.252; *see also id.* § 174.021.[9]

---

[9] Section 174.021, titled "Prevailing Wage and Working Conditions Required", provides:

In support of their respective arguments, the parties point us to the only two cases that have analyzed whether section 174.252 "provides for an unconstitutional delegation of a legislative function to the judiciary." *See City of Port Arthur v. Int'l Ass'n of Fire Fighters, Local 397*, 807 S.W.2d 894, 897-99 (Tex. App.—Beaumont 1991, writ denied); *Kingsville*, 568 S.W.2d at 392-96. The City urges us to follow the *Kingsville* court and hold that section 174.252 provides an unconstitutional delegation of legislative authority to the judicial branch because the guidelines the Legislature furnished in section 174.021 are insufficient to guide a court's discretion.[10] Conversely, the Association asks us to reject the *Kingsville*

---

> A political subdivision that employs fire fighters, police officers, or both, shall provide those employees with compensation and other conditions of employment that are:
>
>> (1) substantially equal to compensation and other conditions of employment that prevail in comparable employment in the private sector; and
>>
>> (2) based on prevailing private sector compensation and conditions of employment in the labor market area in other jobs that require the same or similar skills, ability, and training and may be performed under the same or similar conditions.

*Id.* § 174.021.

[10] In concluding that the Legislature did not prescribe adequate standards to guide the discretion it conferred on the courts to enforce section 174.021's requirements in section 174.252, the *Kingsville* court stated:

> The guideline for directing the District Court's discretion, that compensation and conditions of employment shall be "substantially the same" as those that prevail in private sector employment, is too subjective to prevent arbitrary and unequal application of its provisions notwithstanding the enumeration of factors the Legislature prescribed for the courts to consider.
>
> In our complex society, the terms and conditions of employment are no longer a simple hourly wage or other easily determinable amount. In addition to a flat salary or hourly rate, conditions such as: overtime pay; seniority; sick leave; severance and lay-off pay; fringe benefits including paid vacations, training and further education, insurance benefits, and profit sharing; and special working facilities such as lunchrooms, showers, athletic clubs, and staff medical personnel, all defy quantification or comparison in a uniform manner. For a court to decide which of the above conditions of employment are appropriate for any particular

court's holding and follow the "better reasoned analysis" of the *Port Arthur* court (determining that section 174.252 is not unconstitutional because the Legislature provided sufficient guidelines in section 174.021 to enforce that section's requirements).[11]

---

group of firemen, subject only to a guideline of "substantially the same" would represent a policy determination which is legislative in nature. The generality of the guideline would force District Courts to make certain rules for the future as to how conditions of employment would be determined.

\*    \*    \*

As we stated, . . . a delegation of a legislative power is valid if it is so complete in all its terms and provisions when it leaves the legislative branch that nothing is left to the judgment of the recipient of a delegated power. We find that several matters are left to the judgment of the District Court, as we have pointed out, and accordingly find Section 16 of the Act to be unconstitutional.

*See Kingsville*, 568 S.W.2d at 395 (internal citations omitted). We note that the former The Fire and Police Employee Relations Act, 63d Leg., R.S., ch. 83, 1973 Tex. Gen. Laws 151 (unofficially designated Tex. Rev. Civ. Stat. Ann. art. 5154c-1, since amended) was repealed and codified in 1993 to its current designation as Texas Local Government Code Chapter 174. Former article 5154c-1, section 16 (discussed in *Kingsville* and *Port Arthur*) is now codified in Texas Local Government Code section 174.252. The wording of former article 5154c-1, section 16 did not materially change in that codification.

[11] The *Port Arthur* court determined that section 174.252 is constitutional and criticized *Kingsville*'s decision:

The *Kingsville* court held § 16 unconstitutional as it did not provide sufficient and adequate standards to guide district courts in resolving impasses brought about by recalcitrant employers. The *Kingsville* court cited the general rule that the legislature cannot impose a function upon the judiciary that is legislative in nature, but also recognized in the same breath an exception to the rule. The legislature may, however, delegate to a subordinate body the duty to administer and enforce its legislative function as long as the legislature prescribes sufficient and adequate standards to guide the discretion conferred. The Kingsville court was apparently structuring courts as subordinate bodies of the legislature which needless to say was improper.

The *Kingsville* court concluded that the Texas Legislature failed to provide such standards to guide district courts in their discretion. . . . We disagree with the decision in *Kingsville* that § 16 of the Act is unconstitutional. We take issue with the Corpus Christi court's finding that:

'The guideline for directing the District Court's discretion, that compensation and conditions of employment shall be "substantially the same" as those that prevail

The City relies heavily on *Kingsville* to support its contention that the standards set forth in section 174.021 are so broad, generic, and amorphous that "[e]very judge and every juror would have a differing view of what was the 'same or similar,' and what 'employment' was comparable." The City contends the

---

in private sector employment, is too subjective to prevent arbitrary and unequal application of its provisions notwithstanding the enumeration of factors the Legislature prescribed for the courts to consider.'

In order for a court to find that a city is in violation of § 4, as is initially required under § 16, probative evidence must be presented by the employees. The employees certainly could not prevail should they fail to do so. The burden of proof is on the employees. If a trial court is satisfied, after considering all of the evidence presented, that a city is in violation of § 4, the Act permits the court to apply whatever facts and figures were supplied by the evidence in satisfaction of the Act's requirement under § 16. This is unquestionably a judicial function. Simply put, § 4 sets out a city's obligation to provide compensation for firefighters and/or policemen that is "substantially the same" as that in the private sector. Section 4 is a State policy mandate . . . to make compensation and conditions of employment for firefighters and/or policemen substantially the same as the private sector. Section 16 is the judicial enforcement provision of that duty. A district court reviews the evidence and makes a determination as to whether § 4 has been complied with. This is a legislative creation of a cause of action against employers whose offers violate § 4. Courts are not subordinate legislative bodies and the *Kingsville* court was in error in so stating.

\*　　　　　　\*　　　　　　\*

The *Kingsville* court recognized that the language of § 16 was intrinsically intertwined with the language of § 4. Indeed, it was actually the language of § 4 that gave the *Kingsville* court the most concern; ultimately finding that the language of § 4 provided insufficient guidance for district courts. For this reason, the *Kingsville* court found that the stated exception to the general rule prohibiting the legislature from imposing a legislative function on the judiciary did not apply. Recall that the exception is that so long as the legislature provides sufficient guidelines to the subordinate body (district court), then the legislature may delegate to this subordinate body the duty to administer and enforce its legislation. Carrying the *Kingsville* rationale to its logical conclusion, any section in the Act that provides for administration and/or enforcement of § 4 by a "subordinate body" would also be unconstitutional. . . . To our Pandora's Box we are unwilling to apply the *Kingsville* key.

*See Port Arthur*, 808 S.W.2d at 898-99. We note that former article 5154c-1, section 4 (discussed in *Port Arthur*) is now codified in Texas Local Government Code section 174.021. The wording of former art. 5154c-1, section 4 did not materially change in the codification.

22

statutory language contains no meaningful standards, criteria, or limits to "determine which private sector comparators should apply on how they should change existing HFD pay." The City complains the "statute essentially leaves the parties and the courts to guess at the methods for any comparisons and places no limits on the outcomes" because there are "no limits, either annually or formulaically", "no specified professional disciplines with recognized standards or certifications as to competence and reliability", and "no listed labor or wage rate comparisons from government or industry to be used as a reference or guide." The City insists that "[w]ith no more than the generalized comparison words in § 174.021, any expert will be making it up as they go forward, not following established law or professional discipline, as required under Rule 702 and Texas case law."

For a constitutionally acceptable standard, the City points to the statute establishing the pension system for the City's fire fighters this court analyzed in *City of Houston v. Houston Firefighters' Relief & Retirement Fund*, and maintains that the statute before us requires similar parameters to be a constitutional delegation of legislative authority. 502 S.W.3d at 471, 477-80. In the pension fund case, the City sought a declaration that the statute violates the constitution's separation of powers provision because it is an improper delegation to a non-legislative entity. *Id*. at 473. This court held that the statute was constitutional because the Legislature established reasonable standards to guide the board of trustees in exercising the powers bestowed under the statute to, among other things, receive, manage, and disburse retirement funds. *Id*. at 477-79. The statute (1) set the City's contributions based on member salaries and contributions and not based on an arbitrary decision by the board; (2) set the member contributions as a percentage of their salary; (3) made the City's contribution rate also dependent on

23

the results of an actuarial valuation according to certain criteria; (4) allowed the board to select the actuary but required the actuary to possess certain qualifications; and (5) allowed the board to adopt binding rules, policies, and procedures so long as they are consistent with the statute. *Id*. at 478-79.

The City claims that, just as in the pension fund case, for there to be a proper delegation of legislative authority in this case, the Legislature could have included the following "parameters and safeguards": (1) "set maximum or minimum amounts, or thresholds for annual increases in compensation based on judicial review of private sector pay data from many possible data resources"; (2) "require analysis by experts with certifications or credentials" to "remove the absolutely subjective guesswork that is now required"; and (3) "provide for some correlation to, or factor in consideration of, the prior compliant pay and benefits."

For several reasons, we cannot agree with the City's contention that section 174.252 is an unconstitutional delegation of legislative authority to the judiciary because the Legislature provided inadequate guidelines in section 174.021 for courts to enforce that section's requirements.

To begin with, we take issue with the *Kingsville* court's pronouncements that "a delegation of a legislative power is valid if it is so complete in all its terms and provisions when it leaves the legislative branch that nothing is left to the judgment of the recipient of a delegated power." *Kingsville*, 568 S.W.2d at 395. This pronouncement runs afoul of binding precedent because the supreme court has stated that delegated power must almost always be exercised with a certain amount of discretion and that the Legislature need not include every detail or anticipate every circumstance when permissibly delegating power. *See Boll Weevil*, 952 S.W.2d at 466; *Meno*, 917 S.W.2d at 740; *Lone Star Gas Co.*, 844 S.W.2d at 689.

24

We also reject the contention that the standards outlined in section 174.021 are too subjective and discretionary with no meaningful criteria so that different courts "would have a different view of what was the 'same or similar,' and what 'employment' was comparable", and would have to make "the problematic choice of a labor market for comparison." The terms used in the Act to provide the standards to guide courts in determining if there was a violation of section 174.021 and declaring compensation and work conditions required by section 174.021 are not too subjective and amorphous and already have been applied routinely by courts without difficulty in different areas of the law. *See Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 59 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (applying standard of "comparable" employment in retaliatory discharge case); *Basic Capital Mgmt., Inc. v. Phan*, No. 05-00-00147-CV, 2001 WL 893986, at \*7 (Tex. App.—Dallas Aug. 9, 2001, pet. denied) (applying standards of "comparable" employment and "substantially equivalent" employment in employment discrimination and retaliation case).[12]

Moreover, at least one Texas court has applied the Act's judicial enforcement provision in section 174.252 and the required standards set out in section 174.021. *See City of San Antonio v. Int'l Ass'n of Fire Fighters, Local 624,*

[12] *See also Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 231-32 (1982) (applying standard of "substantially equivalent" employment in the context of mitigation damages in Title VII case); *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308-13 (1977) (discussing "relevant labor market area" considerations for an ultimate determination whether employer engaged in discrimination in a Title VII case); *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 486 (5th Cir. 2007) (applying standards of "comparable" employment and "substantially equivalent" employment in the context of mitigation damages in Title VII case); *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 800-01 (3d Cir. 1991) (determining relevant "labor market" in Title VII case); *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) (applying standard of "substantially equivalent" employment in the context of mitigation damages in Title VII case); *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1138 (5th Cir. 1988) (applying standards of "comparable" employment and "substantially equivalent" employment in the context of mitigation damages in Title VII case).

*San Antonio*, 539 S.W.2d 931, 933-35 (Tex. Civ. App.—El Paso 1976, no writ). There, the fire fighters brought suit under the Act's judicial enforcement provision in section 174.252 because the City of San Antonio rejected arbitration after failing to agree to a requested pay increase. *Id*. at 933. The fire fighters presented evidence from one expert who determined the fire fighters' wages should be increased by 53% to satisfy section 174.021 requirements. *Id*. The trial court concluded the presented evidence was insufficient to establish that the city violated the requirements of section 174.021, and the court of appeals did not disturb the trial court's finding on appeal. *Id*. at 933-34.

We also reject the City's contention that the Legislature gave "virtually no parameters" and failed to "set true standards or criteria" to guide the courts. As we have quoted above, the Legislature in section 174.021 provided descriptive, easily understandable language and commonly used and routinely applied terms in employment law and other areas of the law as well as several factors as guiding posts for courts to determine fire fighters' compensation and work conditions that are *substantially equal* to compensation and other work conditions in *comparable employment* in the private sector based on prevailing private sector compensation and work conditions in the *labor market area* in other jobs that require the *same or similar skills*, *ability*, and *training* and may be *performed* under the *same or similar conditions*. The Legislature chose sufficiently detailed but not too confining language to account for the many different circumstances affecting compensation and other conditions of employment.

In that regard, we disagree with the City that the Act does not provide reasonable standards because it fails to "set maximum or minimum amounts, or thresholds for annual increases in compensation based on judicial review of private sector pay data from many possible data resources." Setting minimum, maximum,

or threshold amounts for annual compensation increases could be unworkable and problematic. For one, a minimum or maximum amount would address employees' compensation only; it would not address substantially equal conditions of employment. Depending on the labor market area and other employment conditions, a maximum or minimum compensation amount that is substantially equal based on prevailing private sector compensation in one geographic area can be substantially different from another geographic area. Also, setting minimum and maximum amounts might be detrimental to employers or employees depending on whether the private sector employees' compensation remains stagnant or drastically increases or decreases. For example, setting thresholds for annual increases in compensation might not account for an unexpectedly higher increase in prevailing private sector compensation and thus not satisfy the Legislature's policy to provide fire fighters with substantially equal compensation. *See* Tex. Loc. Gov't Code Ann. §§ 174.002, 174.021. Therefore, the Legislature's standards in section 174.021 give sufficient guidance and parameters while being fluid enough for courts to consider various different circumstances that make not only pay but also other work conditions substantially equal to the private sector.

Additionally, we disagree with the City's contention that using "prior compliant pay and benefits" as a threshold or as a factor would provide more guidance and precise standards in determining substantially equal compensation and employment conditions. A previously "compliant" collective bargaining agreement may only have been compliant because the parties agreed to it and not because it actually complied with the requirements of section 174.021. *See id*. § 174.022. A previous agreement also may be many years old and, even if compliant at the time it was signed, may be significantly out of step with prevailing private sector compensation and other work conditions so as to provide not much

27

guidance.

Further, we reject the City's assertion that reasonable standards to guide courts' discretion required the Legislature to proscribe "analysis by experts with certifications or credentials" so that experts "will [not] be making it up as they go forward, not following established law or professional discipline, as required under Rule 702 and Texas case law." It is not essential to specifically mandate analysis by experts with particular qualifications because courts only can consider expert testimony that complies with Texas Rule of Evidence 702, namely "'[a]n expert witness may testify regarding 'scientific, technical, or other specialized' matters if the expert is *qualified* and if the expert's opinion is *relevant* and *based on a reliable foundation*.'" *See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 215 (Tex. 2010) (emphasis added) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006)); Tex. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."). In determining whether expert testimony is reliable, courts must consider non-exclusive factors[13] first set out in *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995), as well as the expert's experience, knowledge, and training. *Crump*, 330 S.W.3d at 215-16.

The lack of a mandate that only experts with specific "certifications or

---

[13] Factors include, but are not limited to: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).

28

credentials" can testify presented no obstacle for the San Antonio trial court to apply the Act's judicial enforcement provision in section 174.252 and the required standards set out in section 174.021. *See Int'l Ass'n of Fire Fighters, Local 624*, 539 S.W.2d at 933-34 (refusing to reverse the trial court's finding that the fire fighters' expert evidence was insufficient to establish the city violated the requirements of section 174.021). As the *Port Arthur* court stated in its assessment that section 174.252 is a constitutional delegation of a legislative function to the judiciary to determine whether a public employer violated section 174.021:

> In order for a court to find that a city is in violation of § 4, as is initially required under § 16, probative evidence must be presented by the employees. The employees certainly could not prevail should they fail to do so. The burden of proof is on the employees. If a trial court is satisfied, after considering all of the evidence presented, that a city is in violation of § 4, the Act permits the court to apply whatever facts and figures were supplied by the evidence in satisfaction of the Act's requirement under § 16. This is unquestionably a judicial function. Simply put, § 4 sets out a city's obligation to provide compensation for firefighters and/or policemen that is "substantially the same" as that in the private sector. Section 4 is a State policy mandate . . . to make compensation and conditions of employment for firefighters and/or policemen substantially the same as the private sector. Section 16 is the judicial enforcement provision of that duty. A district court reviews the evidence and makes a determination as to whether § 4 has been complied with. This is a legislative creation of a cause of action against employers whose offers violate § 4.

*Port Arthur*, 807 S.W.2d at 898.

We acknowledge that the statute in the pension fund case[14] provided more detailed standards and guidance than the Act before us, but we disagree with the City that such standards are minimum required standards to pass constitutional scrutiny. The supreme court has made clear that the Legislature is not required to

---

[14] *See Houston Firefighters' Relief & Retirement Fund*, 502 S.W.3d at 477-80.

include every detail or anticipate every circumstance when delegating power because such a requirement would defeat the purpose of delegations. *Meno*, 917 S.W.2d at 740; *Lone Star Gas Co.*, 844 S.W.2d at 689. Nor are statutes invalid based on a legislative failure to include specific details. *Lone Star Gas Co.*, 844 S.W.2d at 689. The supreme court explained that delegated power "must almost always be exercised with a certain amount of discretion, and at times the line between making laws and enforcing them may blur." *Boll Weevil*, 952 S.W.2d at 466. The court recognized that because statutes cannot be entirely precise, some judgments (even involving policy considerations) must be left to the judges applying the statutes. *Id*. Thus, broad standards included in legislative delegation may pass constitutional muster, particularly when "conditions must be considered which cannot be conveniently investigated by the legislature." *See Lone Star Gas Co.*, 844 S.W.2d at 689.

Here, the Legislature's passage of section 174.252 provided the judiciary with both the authority and the duty to enforce the Act's policy that public employers provide fire fighters with compensation and other employment conditions that are substantially equal to compensation and employment conditions prevailing in comparable private sector employment. *See* Tex. Loc. Gov't Code Ann. §§ 174.002, 174.021, 174.252. As stated above, the Legislature in section 174.021 used descriptive language, common and routinely applied terms, and multiple factors for courts to consider in exercising the enforcement authority. Although the stated requirements are not the most detailed and precise, a constitutional standard may be broad and encompass a multitude of factors if it is no more extensive than the public interest demands. *See Jordan v. State Bd. of Ins.*, 334 S.W.2d 278, 280 (Tex. 1960); *Tex. Bldg. Owners & Managers Ass'n, Inc. v. Pub. Util. Comm'n of Tex.*, 110 S.W.3d 524, 535 (Tex. App.—Austin 2003, pet.

30

denied).  If the idea embodied in a phrase is reasonably clear, and we find that it is, a court should find it to be acceptable as a standard of measurement.  *See Jordan*, 334 S.W.2d at 280.  Standards far less descriptive and precise (and even amorphous) have been upheld as adequate and reasonable standards to guide entities to which authority was delegated.[15]

---

[15] *See Mid-Am. Indem. Ins. Co. v. King*, 22 S.W.3d 321, 323, 327-28 (Tex. 1995) (concluding Legislature may delegate authority to courts to dispense with the statutory requirement that before filing a pleading in defense of a suit, an unauthorized insurer must deposit funds "in an amount to be determined by the court sufficient to secure the payment of any final judgment that may be rendered", if the court determines the insurer establishes that it maintains funds or securities that are "sufficient and available to satisfy any final judgment" that may be rendered in the suit); *see also Lone Star Gas Co.*, 844 S.W.2d at 689-90 (upholding the "broad standards in the statutes which delegate authority to the Railroad Commission includ[ing] (1) the prevention of discriminatory production and taking of natural gas, (2) the prevention of waste and (3) the promotion of conservation"; "It is utterly impossible for the Legislature to meet the demands of every detail in the enactment of laws relating to the production of oil and gas."); *Key W. Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 844-45 (Tex. 1961) (concluding Legislature may delegate authority to the former State Board of Insurance under the statute's "encourages misrepresentation" provision; the "standards the Supreme Court (of the United States) has held adequate include 'just and reasonable,' 'public interest,' 'unreasonable obstruction to navigation,' 'reciprocally unequal and unreasonable,' 'public convenience, interest, or necessity,' 'tea of inferior quality,' 'unfair methods of competition,' 'reasonable variations,' 'unduly or unnecessarily complicate the structure' of a holding company system or 'unfairly or inequitably distribute voting power among security holders'"); *Jordan*, 334 S.W.2d at 280 (approving a statutory grant of power to the Insurance Commissioner to determine if an officer or director of an insurance company is "not worthy of public confidence"; "While the term 'not worthy of the public confidence' is broad and undoubtedly encompasses a multitude of factors, it is no more extensive than the public interest demands.  Further the idea embodied within the phrase is reasonably clear and hence acceptable as a standard of measurement."); *Sw. Sav. & Loan Ass'n v. Falkner*, 331 S.W.2d 917, 920 (Tex. 1960) (upholding Legislature's delegation of power to the Banking Commissioner to ascertain "whether the public convenience and advantage will be promoted by allowing such proposed building and loan association to be incorporated and engaged in business, and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed building and loan association" before granting a certificate to establish and operate a branch office; "The statutory standards of public convenience and advantage, and adequate population to assure reasonable support, are sufficient statutory basis for the rules and regulations."); *Holloway v. Butler*, 828 S.W.2d 810, 811-13 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (upholding the constitutionality of a statute permitting trial courts to set court reporters' fees; "If an objection is made to the amount of the transcript fee, the judge shall determine a reasonable fee, taking into consideration the difficulty and technicality of the

Based on the foregoing analysis and authorities, we conclude (1) the City failed to establish that section 174.252 is an unconstitutional delegation of a legislative function to the judiciary in violation of the separation of powers provision in the Texas Constitution, and (2) the trial court did not err in denying the City's motion for summary judgment. Accordingly, we overrule the City's first issue.

## C.  Good Faith and Mandatory Subjects

In addition to the controlling questions the trial court identified in its order permitting an interlocutory appeal, the City raises two additional issues which were also raised below. The City argues in its second issue that (1) its motion for summary judgment conclusively proved the Association never negotiated in good faith for compensation or benefits based on prevailing private sector compensation and conditions of employment as required by section 174.021, and (2) "[t]he lack of this essential factual element deprives the court of jurisdiction over this matter." In its third issue, the City contends the trial court erroneously denied its motion for summary judgment because (1) any "statutory right to enforcement" in section 174.252 "is limited to 'mandatory subjects' of bargaining and negotiation", and (2) there is no "evidence that key contract elements pleaded by the Association meet the test under Texas law for 'mandatory subjects.'"

These two issues are not within the scope of this permissive interlocutory appeal. We construe section 51.014(d) of the Texas Civil Practice and Remedies

material to be transcribed and any time constraints imposed by the person requesting the transcript."); *Tex. Bldg. Owners & Managers Ass'n, Inc.*, 110 S.W.3d at 535-36 (upholding a statutory delegation of authority to the Public Utility Commission to enforce the right of a property owner to require a utility to pay "reasonable" and "nondiscriminatory" compensation when a utility gains access to the property and rejecting an argument that the statutes do not contain sufficient standards to guide the Commission in making its determination).

Code strictly because it provides for an interlocutory appeal, which is an exception to the general rule that only final judgments are appealable. *Lakes of Rosehill Homeowners Ass'n, Inc. v. Jones*, 552 S.W.3d 414, 418 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Gulf Coast Asphalt Co. v. Lloyd*, 457 S.W.3d 539, 545 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "Our scope of review in a permissive interlocutory appeal is limited to controlling legal questions on which there are substantial grounds for disagreement and the immediate resolution of which may materially advance the ultimate termination of the litigation." *Jones*, 552 S.W.3d at 418; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d); Tex. R. App. P. 28.3(e); Tex. R. Civ. P. 168. The parties may not add to the trial court's description of the controlling legal question. *Jones*, 552 S.W.3d at 418; *see also Lloyd*, 457 S.W.3d at 544; *White Point Minerals, Inc., v. Swantner*, 464 S.W.3d 884, 890-91 (Tex. App.—Corpus Christi 2015, no pet.).

The trial court permitted the City to file interlocutory appeals to address the controlling questions of law identified by the trial court. We granted the City's petition for permission to appeal to address these controlling questions of law, and we addressed them in our analysis of the City's first issue. We therefore do not address other matters argued in the City's or the Association's briefs. Accordingly, we overrule the City's second[16] and third issues.

CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction and cross-motion for summary judgment.

---

[16] We note that because the City's second issue in the permissive appeal basically mirrors the second issue it raises in its plea to the jurisdiction appeal, we have already addressed said issue in our plea to the jurisdiction analysis.

/s/    Meagan Hassan
       Justice


Panel consists of Justices Wise, Spain, and Hassan.